**ALLSTATE INSURANCE COMPANY, Appellant–Defendant,**

v.

**Phillip B. SANDERS, Michelle Sanders, Robert C. Sanders, and Toni Sanders, Appellees–Plaintiffs,**

**State Farm Mutual Automobile Insurance Company, Appellee–Defendant.**

**No. 49A02–9312–CV–666.**

Court of Appeals of Indiana, Third District.

Dec. 20, 1994.

John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, for appellant.

David A. DeMoss, Carla Van Dongen, DeMoss & Associates, Indianapolis, for State Farm Mut. Auto. Ins. Co.

Charles G. Reeder, Holland & Holland, Indianapolis, for Phillip B. Sanders, Michelle Sanders, Robert C. Sanders and Toni Sanders.

STATON, Judge.

Phillip B. Sanders, Michelle Sanders, Robert C. Sanders and Toni Sanders ("Phillip" and "Robert", collectively "Sanders") brought an action against Allstate Insurance Co. ("Allstate") seeking recovery of underinsurance benefits under their Allstate policy. Pursuant to Ind.Appellate Rule 4(B)(6), Allstate brings this interlocutory appeal from the trial court's denial of its motion for judgment on the pleadings. Allstate raises two issues for our review, which we consolidate and restate as whether the trial court erred in denying Allstate's motion.

The facts most favorable to the trial court's order reveal that on December 18, 1990, Phillip and Robert Sanders were seriously injured in an automobile accident caused by the negligence of Dorothy Hartgraves ("Hartgraves"). The terms of Hartgraves' auto insurance policy provided bodily injury liability coverage of $50,000 per person and $100,000 per accident. Pursuant to those terms, Hartgraves' insurer paid Phillip and Robert $50,000 each for their injuries.

When the accident occurred, Robert was driving a company vehicle owned by P.B.S. Builders and insured under a business auto policy issued by Allstate. Both Robert and Phillip were insured under the Allstate policy, which provided underinsured motor vehicle coverage in the amount of $100,000. Because Robert and Phillip sustained injuries in excess of the $50,000 paid to each of them by Hartgraves' insurer, they each sought to recover under the underinsured motor vehicle provision of Allstate's policy. Allstate denied their claims, arguing that because Hartgraves' policy's $100,000 per accident coverage equalled Sanders' $100,000 underinsurance coverage, Hartgraves' vehicle was not underinsured under the terms of the Allstate policy.

Sanders thereafter filed this action seeking recovery from Allstate. Allstate moved for judgment on the pleadings, alleging that as a matter of law, Hartgraves' vehicle was not underinsured and thus Robert and Phillip were not entitled to recovery under the underinsurance provisions of Allstate's policy. The trial court denied Allstate's motion and certified its order as interlocutory. This court accepted this interlocutory appeal pursuant to App.R. 4(B)(6).

Allstate moved for judgment on the pleadings pursuant to Ind.Trial Rule 12(C). For purposes of this motion, the moving party admits all well pleaded facts and the reasonable inferences to be drawn therefrom, as well as the untruth of any of his own allegations which have been denied by the nonmovant. *Mirka v. Fairfield of America, Inc.* (1994), Ind.App., 627 N.E.2d 449, 450, *trans. denied.* Judgment on the pleadings is appropriate only when the pleadings present no material issues of fact, and the facts therein

clearly entitle the moving party to judgment. *Id.*

Relevant to Allstate's motion is the following section of the Indiana Insurance Code defining an underinsured motor vehicle:

For purposes of this chapter, the term underinsured motor vehicle, subject to the terms and conditions of such coverage, includes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident, ...

Ind.Code § 27-7-5-4(b) (1993). In this regard, the terms and conditions of Allstate's policy provide:

5. "Underinsured motor vehicle" means a land motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana, but their limits are less than the limits of this insurance.

Record, p. 120. Allstate argues that under both of these definitions, Hartgraves' vehicle cannot be considered underinsured, because the "per accident" bodily injury liability limit of Hartgraves' policy is not less than the underinsured motor vehicle coverage of Allstate's policy. In reply to Allstate's argument, Sanders argues that the "per person" bodily injury liability limit applies to determine whether Hartgraves' vehicle is underinsured. Since Hartgraves' per person limit is $50,000, Hartgraves is underinsured $50,000 for each injured party insured under its policy.

Our courts have not yet had occasion to decide which of a tortfeasor's policy limits applies to determine whether the tortfeasor's vehicle is underinsured for purposes of Ind. Code § 27-7-5-4(b). This question of statutory interpretation is a case of first impression in Indiana.

A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as

well as the effect and consequences of such interpretation. *State v. Windy City Fireworks, Inc.* (1992), Ind.App., 600 N.E.2d 555, 558, *adopted on transfer* (1993), Ind., 608 N.E.2d 699. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215, 218, *trans. denied.* We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.* We presume words appearing in the statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth* (1992), Ind.App., 590 N.E.2d 154, 157, *trans. denied.*

In support of its argument that the "per accident" limit is determinative, Allstate relies on several cases from other jurisdictions. Most factually similar is *Leetz v. Amica Mutual Insurance Co.* (1992), Colo.App., 839 P.2d 511, in which the heirs of Delores Leetz ("Leetz") sought recovery under the underinsured motor vehicle provisions of a policy issued by Amica Mutual Insurance Co. ("Amica"). The facts indicated that Delores Leetz was killed and three other occupants of a vehicle insured by Amica were injured due to the negligence of a second driver. The second driver's auto insurance carried a "per accident" limit of $50,000 which was divided equally, resulting in payments of $16,000 to each of the four injured parties. The Amica policy carried underinsured motor vehicle coverage of $50,000; Leetz's heirs demanded from Amica the $34,000 difference as under-

insurance benefits. Amica rejected Leetz's demand on the grounds that the tortfeasor's vehicle was not underinsured.

The Colorado Court of Appeals agreed and affirmed summary judgment for Amica. In so doing, the Colorado court examined both the language of the relevant Colorado statute as well as the language of the Amica policy.[1] On that basis, the court concluded that underinsurance coverage applies only if the tortfeasor's vehicle is an underinsured vehicle. In order to so determine, the court compares the tortfeasor's per accident liability coverage with the insured's underinsured motor vehicle coverage. *Id.* at 512. The court reasoned:

> A policy providing $25,000 per person/ $50,000 per accident coverage means that, in any one accident, if only one person is injured or killed, the limit of liability is $25,000, but if two or more persons are injured or killed, the limits of liability is $50,000.
>
> Here, four people were injured or killed in the accident. Accordingly, we compare the $50,000 *per accident* liability limit under the Farmers policy to the $50,000 single limit for uninsured motorist under the Amica policy. Because the liability limit is not less than the uninsured motorist limit, the tortfeasor's vehicle was not underinsured. Thus, the heirs were not entitled to any underinsurance [sic] motorist benefits under the Amica policy.

*Id.* at 513 (citations omitted) (emphasis in original).

*Leetz* is consistent with similar decisions in other jurisdictions. *See State Farm Mutual Automobile Insurance v. Messinger* (1991), Cal.App., 232 Cal.App.3d 508, 283 Cal.Rptr.

---

1. Specifically, the *Leetz* court examined the following provision of the relevant Colorado statute:

'Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle [which] is insured or bonded for bodily injury or death at the time of the accident but the limits of liability for bodily injury or death under such insurance or bonds are:

(a) *Less than the limits for uninsured motorist coverage under the insured's policy;* or
(b) Reduced by payments to persons *other than an insured* in the accident to less than the limits of uninsured motorist coverage under the insured's policy.' (Emphasis added.)

*Id.* at 512 (quoting Colo.Rev.Stat. § 10–4–609(4) (1987 Repl.Vol 4A)). The court went on to conclude that the definition of underinsured motor vehicle in the Amica policy was consistent with this provision. *Id.*

493; *Farmers Insurance Company of Idaho v. Buffa* (1991), 119 Idaho 345, 806 P.2d 438.

We conclude that this rationale is persuasive. A careful reading of both I.C. 27-7-5-4(b) and the underinsured provision in the Allstate policy indicates that those provisions speak in terms of an underinsured motor vehicle. *See Jones v. State Farm Mutual Automobile Ins. Co.* (1994), Ind.App., 635 N.E.2d 200, 203, *trans. pending* (the status of the tortfeasor's vehicle is controlling for purposes of I.C. 27-7-5-4(b)).

Moreover, a careful reading of the related underinsurance provisions of the Indiana Insurance Code reveals that our legislature did not intend to require insurers to provide full indemnification to victims of underinsured motorists under all circumstances. The language of I.C. 27-7-5-4(b) does not require full indemnification; instead, the statute's focus is on placing the insured in the position he would have occupied if the tortfeasor had liability coverage equal to his underinsured motorist limits. As additional support that full indemnification was not intended, Ind. Code § 27-7-5-2(b) allows the named insured the right to reject in writing both the uninsured motorist coverage and the underinsured motorist coverage provided therein.

Sanders argues that the language in I.C. 27-7-5-4(b) comparing the limits of coverage available for payment "to the insured" with the limits of the insured's underinsured motorist coverage is singular, thus distinguishing it from the statutes at issue in *Leetz, supra,* and *Messinger, supra.* According to Sanders, this singular language indicates that our General Assembly intended the availability of underinsurance coverage to be determined based on the amount of payments to each injured party insured under the policy. We disagree. The term "insured" is commonly used collectively to refer to all parties covered under the terms of a single insurance policy. *See, e.g. American States Insurance Co. v. Braden* (1993), Ind.App., 625 N.E.2d 1252, 1256, *trans. dismissed.* The singular construction advanced by Sanders would create for an insurer potential unlimit- ·

ed underinsurance liability based on the number of injured persons who qualify as insured under a policy. We do not believe such is within the spirit and intention of our legislature in enacting I.C. 27-7-5-4(b).[2]

In the case at bar, the undisputed facts indicate that Phillip and Robert were injured in an accident caused by Hartgraves' negligence, both of whom were insured under Allstate's policy. Hartgraves' insurance paid to Phillip and Robert the applicable limit of her policy: $100,000. This amount is equal to the underinsured motor vehicle coverage of the Allstate policy. Thus by definition, Hartgraves' vehicle was not underinsured. Accordingly, Phillip and Robert cannot recover from the underinsured motor vehicle provision of Allstate's policy, and the trial court erred in denying Allstate's motion.

We reverse and remand with instructions that the trial court enter judgment on the pleadings in favor of Allstate.

FRIEDLANDER, J., concurs.

GARRARD, J., concurs with separate opinion.

GARRARD, Judge, concurring.

For me the critical feature of this lawsuit concerns the fact that the negligent driver had split coverage insurance ($50,000 per person and a maximum of $100,000 per accident) while the Allstate policy was a single limit policy providing $100,000 per accident. I agree with the statement that the purpose of the statute is to give an insured the opportunity by electing the coverage to place himself in the position he would have occupied if the tortfeasor had coverage equal to his own underinsured motorist limits. Since the per accident value of the available coverage was equal to what the Allstate policy protected, I agree that Hartgraves' vehicle was not an underinsured vehicle. Therefore I concur in the result reached by the majority.

---

**2.** In its statutory context, it is clear that our legislature is using the term "insured" as a collective noun: a noun that denotes a whole or group with similar characteristics or made up of

similar parts, *e.g,* Congress. *See* JOHN B. OP-DYCKE, HARPER'S ENGLISH GRAMMAR 17-18 (1965)