**James T. CORR and Pamela A. Corr, Appellants (Plaintiffs Below),**

v.

**AMERICAN FAMILY INSURANCE, Appellee (Defendant Below).**

No. 71S03–0107–CV–336.

Supreme Court of Indiana.

May 8, 2002.

Michael J. Anderson, South Bend, IN, Attorney for Appellants.

Sean E. Kenyon, Robert J. Konopa, South Bend, IN, Attorneys for Appellee.

## ON PETITION FOR TRANSFER

BOEHM, Justice.

We hold that a vehicle is an "underinsured motor vehicle" pursuant to Indiana Code section 27–7–5–4(b) if the amount actually available for payment to the insured from the tortfeasor's bodily injury liability policies is less than the policy limits of the insured's underinsured motorist coverage.

### Factual and Procedural Background

On June 9, 1997, fifteen-year-old Janel Lacee Corr died from injuries sustained the previous day in a one-car accident on the Indiana Toll Road in LaPorte County. Janel was a passenger in a minivan driven

by Andres Balderas that left the roadway, then slid and overturned when Balderas attempted to bring it back onto the road. Four other occupants of the van were seriously injured in the crash. The owner of the van, Balderas' father, had an automobile insurance policy with bodily injury liability limits of $100,000 per person and $300,000 per accident. Balderas' mother had a separate auto policy from a different insurer, but with the same limits. Each of these two insurance companies tendered $300,000—its per accident limit—to the trial court and the two filed an action to determine the proper allocation of that fund among the several claimants. Following mediation, the parties to that lawsuit agreed that Janel's parents, who were divorced, would each receive $57,500. These amounts were paid and the insurers on the two Balderas policies are not involved in this litigation.

Janel's father, James T. Corr, had purchased his auto insurance from American Family Insurance ("AFI"). That policy provided underinsured motorist ("UIM") coverage of $250,000 per person and $500,000 per accident. At some point before the accident, Corr had asked his insurance agent, Glenn Shultz, how they could reduce Corr's premiums. Shultz lowered the UIM policy limits to $100,000 per person and $300,000 per accident, allegedly without Corr's approval, and those limits were in effect at the time of the accident. AFI denied Corr's claim for Janel's death under his UIM coverage, contending that the Balderas van was not "underinsured."

Corr sued AFI, seeking a declaratory judgment that (1) Janel was an insured under his policy, and (2) his UIM coverage was $250,000 per person and $500,000 per accident rather than $100,000 and $300,000 respectively. Janel's mother, Pamela A. Corr, had a separate policy with $100,000 and $300,000 limits, also from AFI and also including UIM coverage. AFI moved to join Pamela as a plaintiff, and that was done by agreement.

AFI then moved for summary judgment against both Corrs. The trial court granted summary judgment for AFI on the ground that the Balderas van was not underinsured, which rendered the issue of the limits on James Corr's UIM coverage irrelevant. In an unpublished memorandum decision, the Court of Appeals affirmed. *Corr v. Am. Family Ins.,* 742 N.E.2d 43 (Ind.Ct.App.2000) (mem.).[1] We granted transfer.

### Standard of Review

On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Bemenderfer v. Williams,* 745 N.E.2d 212, 215 (Ind.2001). All facts and reasonable

---

1. In a separate action against Shultz, James Corr contended Shultz negligently lowered Corr's UIM coverage to the limits in effect at the time of the accident. The trial court granted summary judgment for Shultz, holding the van was not underinsured even if Corr's policy had the higher limits, so Shultz's alleged negligence was irrelevant. A different panel of the Court of Appeals concluded the van was underinsured and reversed the trial court in a published opinion written by Judge

Kirsch. *Corr v. Schultz,* 743 N.E.2d 1194, 1200 (Ind.Ct.App.2001). Although we agreed with Judge Kirsch, we granted transfer in that case because of the conflict between these two recent decisions and the conflict between *Schultz* and *Allstate Ins. Co. v. Sanders,* 644 N.E.2d 884 (Ind.Ct.App.1994). Summary judgment for Shultz is reversed in a companion case today, *Corr v. Shultz,* 767 N.E.2d 541 (Ind.2002).

inferences drawn from those facts are construed in favor of the nonmoving party. *Id.*

### The Van as an Underinsured Motor Vehicle

■ Indiana Code section 27–7–5–4(b) states:

For the purpose of this chapter, the term underinsured motor vehicle, subject to the terms and conditions of such coverage, includes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less, than the limits for the insured's underinsured motorist coverage at the time of the accident, but does not include an uninsured motor vehicle as defined in subsection (a).

Ind.Code § 27–7–5–4(b) (1998).

AFI contends this statutory language requires a comparison of the $600,000 per accident bodily injury liability limits provided by the two Balderas policies to the $300,000 per accident UIM limit under either James' or Pamela's policy. Under this comparison, AFI contends the van was not underinsured because the aggregate limits of Balderas' bodily injury liability coverage exceeded the limit of either James or Pamela Corr's UIM coverage. This contention is phrased in terms of the per accident limits, not the per person limits. For support, AFI relies on *Allstate Ins. Co. v. Sanders,* 644 N.E.2d 884, 886–87 (Ind.Ct.App.1994), where the court held that if more than one person is injured in an accident, the tortfeasor's per accident liability limit controls for purposes of determining whether a vehicle is "underinsured." In that case both injured parties were insured by the same UIM policy. *Id.* at 885. Under those circumstances the per accident limits may have been rele-

vant. Here, however, Janel was the only injured party insured under the Corrs' UIM policies. Indiana Code section 27–7–5–5(c) states that the maximum amount payable for bodily injury under UIM coverage is the lesser of (1) the difference between the amount paid in damages to the insured by the tortfeasor and the "per person limit" of UIM coverage held by the insured, and (2) the difference between the total amount of damages incurred by the insured and the amount paid by the tortfeasor. Accordingly, if a limits-to-limits comparison is to be employed, where only one insured is injured in an accident, the appropriate limits to compare to determine if a vehicle is underinsured are the per person limit of the tortfeasor's liability policy and the per person limit of the insured's UIM coverage.

The mediation resolved that Balderas' mother's policy operated in this circumstance as an excess policy over the father's policy. The aggregate per person coverage under the two Balderas policies is therefore $200,000. The per person limit under Pamela's UIM coverage is $100,000. The per person limit under James' UIM coverage is disputed. James claims the amount is $250,000, and AFI contends it is $100,000. The amount actually recovered by the two Corrs was $57,500 each, or a total of $115,000. The issue is whether we are to compare the Balderas policy limits ($200,000) or the amount recovered ($57,500) to the amount of each Corr's UIM coverage.

■ AFI relies on *Sanders,* 644 N.E.2d at 887, where the Court of Appeals, relying on Colorado case law interpreting Colorado's UIM statute, held a policy limits to policy limits comparison was mandated in Indiana. The Corrs contend, and the Court of Appeals in the *Schultz* case agreed, that under the Indiana statute the proper comparison is between the amount

of each Corr's UIM coverage and the amount of the coverage limits actually "available for payment" to each Corr from Balderas' coverage. Under that comparison, the Corrs argue, the van is underinsured because the amount available for payment to each Corr ($57,500) is less than the limit of each Corr's UIM coverage ($100,000 for Pamela, and either $100,000 or $250,000 for James). Although neither side's view of the statute is problem-free, for the reasons that follow we agree with the Corrs.

As Judge Kirsch writing for the Court of Appeals in the *Schultz* case pointed out, the Colorado statute interpreted in *Leetz v. Amica Mut. Ins. Co.*, 839 P.2d 511 (Colo.Ct.App.1992), and relied upon by *Sanders,* is not the same as Indiana's UIM statute. 743 N.E.2d at 1198. The Colorado statute provides: "An underinsured motor vehicle is a land motor vehicle [which] is insured ... but the limits of liability for bodily injury or death ... are: (a) Less than the limits for uninsured motorist coverage under the insured's policy." Colo.Rev.Stat. § 10–4–609(4) (2001). Thus, the statute expressly requires a limits-to-limits comparison. The Indiana statute turns on the amount of the "coverage limits available for payment to the insured" not the overall coverage limits of the policy. Indiana's UIM statute does not express this clear preference for limits-to-limits comparison. Instead it uses the phrase "available for payment to the insured" to describe the coverage limits to which it is referring. That term, though not as clear as it might be, has some judicial history. The Ohio UIM statute uses language identical to Indiana's statute.[2] In *Motorists Mut. Ins. Co. v. Andrews,* 65 Ohio St.3d 362, 604 N.E.2d 142, 145 (1992), the Supreme Court of Ohio held that where the claims of multiple parties had resulted in a "reduction of the amount available for payment to the insured below the underinsured motorist limits," the statute required "a comparison between the amount actually available for payment to an insured and the policy limits of the insured's underinsured motorist coverage." That holding was recently reaffirmed in *Clark v. Scarpelli,* 91 Ohio St.3d 271, 744 N.E.2d 719, 726–27 (2001), in which the court noted that the holding of *Andrews* had survived subsequent changes to the Ohio statute.[3]

A cardinal rule of statutory construction in Indiana, now codified, is that "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense." I.C. § 1–1–4–1(1). "Available" ordinarily means "present or ready for immediate use." Merriam Webster's Collegiate Dictionary

---

**2.** The "triggering" provision of the Ohio statute provides that if UIM coverage is included in a policy, that coverage must provide protection for insureds "where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the underinsured motorist coverage." Ohio Rev. Code Ann. § 3937.18(C) (Anderson 2002) (formerly Ohio Rev.Code Ann. § 3937.18(A)(2)). The Ohio statute also contains a "setoff" provision which has no counterpart in Indiana's UIM statute providing that, "The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." *Id.*

**3.** Since *Clark* was decided, the Ohio UIM statute has been revised again, and the inclusion of UIM coverage in a policy is now permissive rather than mandatory. Significantly, the language with which we are concerned remains unchanged, and although the legislative history of the revised statute reveals the expressed intent of the Ohio General Assembly to supersede a number of Supreme Court of Ohio decisions, neither *Andrews* nor *Clark* is among them.

79 (10th ed.1993). Thus, "available for payment to the insured," when describing coverage limits, is money present or ready for immediate use by the insured, not amounts potentially accessible. Under this view, the amount "available" is the $57,500 each Corr actually recovered, not the $200,000 theoretically available from Balderas. Moreover, if the term "available for payment" did not achieve this result, it would apparently be wholly surplusage, contrary to standard principles of statutory construction. *State ex rel. Hatcher v. Lake Superior Court,* 500 N.E.2d 737, 740 (Ind.1986); *see also Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt., Inc.,* 643 N.E.2d 331, 339 (Ind. 1994) (mere surplusage unacceptable according to ordinary canons of statutory construction).

■ Our holding today is also congruent with the underlying purpose of UIM coverage, which broadly stated is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance. 12 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 171:2 (1995). In *United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455, 459 (Ind. 1999), this Court held that UIM coverage is "designed to provide individuals indemnification in the event negligent motorists are not adequately insured." We noted the statute requiring UIM and uninsured motorist coverage "is a mandatory coverage, full-recovery, remedial statute." *Id.* at 460. Because the statute is remedial, it is to be liberally construed. *Id.* at 459–60. Although we agree with AFI that a full-recovery statute will not necessarily assure full indemnification for all potential damage to all potential insureds, we do not

read the statute as narrowly as AFI does. As the Court of Appeals pointed out in *Schultz,* the interpretation AFI advances "leads to the anomalous result that when multiple people are injured in an accident, an injured party is in a better position if the driver responsible for the accident is not insured at all than if he or she has insurance." 743 N.E.2d at 1197. Here, if Balderas had no insurance, the Corrs' uninsured motorist coverage would have applied and they each could have filed a claim up to the limits of that coverage. Because Balderas was covered, however, AFI argues the Corrs' recovery is limited to a total of $115,000. This is inconsistent with the view of the statute as a full-recovery, remedial measure.

We recognize that the view we take of the statute creates it own anomalies. If, as here, there are multiple claimants they may reduce the "amount available" to any single claimant below the minimum UIM coverage even if the limits if applied to only one claimant would be adequate. We conclude that the legislature has chosen to look to "available" amounts, and accordingly accept this anomaly as less problematic than leaving the victim of an underinsured motorist worse off than the victim of a wholly uninsured motorist.

■ Finally, AFI argues the language of its policy dictates a limits-to-limits comparison.[4] If so, the policy provides less coverage than the statute requires. We agree with the Court of Appeals in the *Schultz* case that although parties may contract to limit liability, insurers may not offer less coverage than the law requires. 743 N.E.2d at 1199. Thus, although the phrase "subject to the terms and conditions of such coverage" in section 27–7–5–

---

4. The policy defines an underinsured motor vehicle as "a motor vehicle which is insured by a liability bond or policy ... which pro- vides bodily injury liability limits less than the limits of liability of this Underinsured Motorists coverage."

4(b) allows parties to contract for more coverage than the law requires, it does not allow them to contract for less. *See, e.g., Ind. Ins. Co. v. Allis,* 628 N.E.2d 1251, 1253–54 (Ind.Ct.App.1994), *trans. denied* (same language in section 27–7–5–4(a) means insurer providing statutory coverage may also offer "greater, albeit very specific coverage"). To the extent the Corrs' policies provide less coverage than required by Indiana law, the law mandates that the coverage be expanded to the statutory requirement.

### Conclusion

The van in which Janel Corr was riding when fatally injured was underinsured, therefore summary judgment for AFI was not appropriate. The judgment of the trial court is reversed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.