AUTO–OWNERS INSURANCE
COMPANY, Appellant–
Defendant,

v.

David EAKLE, Melissa Eakle, Helen
Eakle, and Leon Eakle,
Appellees–Plaintiffs.

No. 49A04–0606–CV–345.

Court of Appeals of Indiana.

July 17, 2007.

Thomas R. Haley III, Geoffrey C. Lambert, Jennings Taylor Wheeler & Haley, P.C., Carmel, IN, Attorneys for Appellant.

Peter A. Schroeder, Joseph P. Maguire, Cynthia E. Lasher, Norris Choplin & Schroeder, LLP, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Auto–Owners Insurance Company ("Auto–Owners") brings this interlocutory appeal from the trial court's denial of its motions for judgment on the pleadings and for summary judgment, and from the trial court's grant of summary judgment in favor of David, Melissa, Helen and Leon[1] Eakle (collectively "the Eakles"), the Appellees.

We reverse and remand with instructions.[2]

*ISSUE*

Whether the trial court erred when it denied Auto–Owners' motion for judgment on the pleadings and alternative motion for summary judgment and granted the Eakles' motion for summary judgment, finding that the tortfeasor's vehicle was underinsured and that the Eakles were entitled to Auto–Owners' underinsured motorist coverage.

*FACTS*

On August 24, 2003, David Eakle and his parents, Helen and Leon, were seriously injured in an automobile accident that was caused by Lavern Weddel ("Weddel") when Weddel failed to stop at a red stoplight in Indianapolis. Weddel died from the injuries that she sustained after her Oldsmobile struck the Eakles' Dodge Durango. David incurred medical expenses exceeding $20,000.00, while Helen and Leon incurred medical expenses and nursing care facility expenses in excess of $150,000.00 and $120,000.00, respectively. David, Helen and Leon filed a claim with Weddel's insurer, Indiana Insurance Company. David's wife, Melissa, also submitted a claim alleging loss of consortium. Indiana Insurance Company offered to pay the four claimants its per accident policy limit of $500,000.00 to be allocated as follows: $245,000.00 to Helen; $160,000.00 to Leon; $90,000.00 to David; and $5,000.00 to Melissa. The Eakles notified their insurer, Auto–Owners, of Indiana Insurance Company's offer. Thereafter, the Eakles accepted the offer with Auto–Owners' permission, thereby agreeing to release Weddel's estate from further liability.

At the time of the accident, the Eakles' Dodge Durango was insured under a poli-

---

1. We were saddened to learn that Leon Eakle passed away on November 27, 2006.

2. On April 12, 2007, we heard oral argument in this matter. We thank counsel for their able presentations.

cy issued by Auto–Owners to Midwest Wholesale Tires d/b/a Southside Tire Service. David and Melissa Eakle were "additional insureds" under the policy, which provided uninsured and underinsured motorist ("UIM") coverage of $500,000.00 per person and $500,000.00 per accident.[3] (Auto–Owners' App. 12).

The following section of the Indiana Insurance Code defining an underinsured motor vehicle is relevant to Auto–Owners' motions.

> For the purpose of this chapter, the term underinsured motor vehicle, subject to the terms and conditions of such coverage, includes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident, but does not include an uninsured motor vehicle as defined in subsection (a).

Ind.Code § 27–7–5–4(b). In this regard, the terms and conditions of Auto–Owners' policy defined an "underinsured automobile" as follows:

> (2) Underinsured automobile means an automobile to which a bodily injury liability bond or policy applies at the time of the occurrence;
>
> (a) in at least the minimum amounts required by the Financial Responsibility Law in the State where [the] automobile is normally garaged; but
>
> (b) provides limits of liability less than those stated in the Declarations for Underinsured Motorist Coverage.

(Auto–Owners' App. 28). The policy provided coverage as follows:

> 2. Coverage
>
> a. We will pay compensatory damages any person is legally entitled to recover:
>
> (1) from the owner or operator of an uninsured automobile or an underinsured automobile;
>
> (2) for bodily injury sustained while occupying or getting into or out of an automobile that is covered by SECTION II—LIABILITY COVERAGE of the policy.
>
>         * * *
>
> c. The bodily injury must be accidental and arise out of the ownership, maintenance or use of the uninsured automobile or the underinsured automobile.

*Id.* The policy provided the following limits of liability on underinsured motorist coverage for an accident caused by an underinsured motorist:

> 4. Limit of Liability
>
> We will pay damages for bodily injury or property damage as follows:
>
> a. Our limit of liability for compensatory damages because of or arising out of bodily injury to any one person in any one occurrence is the least of:
>
> (1) the difference between:
>
> (a) the amount paid in compensatory damages to the injured person by or for any person or organization who may be liable for the injured person's bodily injury; and
>
> (b) the "each person" limit for Uninsured or Underinsured Motorist Coverage stated in the Declarations; or
>
> (2) the difference between:

---

**3.** The Auto–Owners' insurance policy refers to this limit as the "per occurrence" limit; however, because most of the case law cited herein, refers to this limit as the "per accident" limit, we will use that terminology henceforth.

(a) the total amount of compensatory damages incurred by the injured person; and

(b) the amount paid by or for any person or organization liable for the injured person's bodily injury.

b. Our limit of liability for all compensatory damages because of or arising out of bodily to two or more persons in any one occurrence, subject to a. above, is the least of:

(1) the difference between:

(a) the total amount paid in compensatory damages by or for any person or organization who may be liable for the injured person's bodily injury; and

(b) the "each occurrence" limit for Uninsured or Underinsured Motorist Coverage stated in the Declarations; or

(2) the difference between:

(a) the total amount of compensatory damages incurred by the injured persons; and

(b) the total amount paid by or for any person or organization liable for the injured person's bodily injuries.

\* \* \*

d. The Limit of Liability is not increased because of the number of:

(1) automobiles shown or premiums charged in the Declarations;

(2) claims made or suits brought;

(3) persons injured; or

(4) automobiles involved in the occurrence.

e. The amount we pay will be reduced by any amounts paid or payable for the same bodily injury:

\* \* \*

(3) by or on behalf of any person or organization who may be legally responsible for the bodily injury.

*Id.* at 29–30.

After the Eakles advised Auto–Owners of Indiana Insurance Company's settlement offer, Auto–Owners "chose not to advance payment to any of the Eakles in an amount equal to the Indiana Insurance offer as allowed under the Auto–Owners policy." Auto–Owners' Br. 10. The Eakles filed a claim with Auto–Owners for coverage payments under the UIM endorsement of the policy. Auto–Owners denied the claim, contending that Weddel's vehicle was not underinsured.

■ The Eakles sued Auto–Owners for breach of contract and also sought a declaratory judgment that they were entitled to compensation for their UIM claims under the Auto–Owners insurance policy. Auto–Owners filed a motion for judgment on the pleadings along with a memorandum in support. In response, the Eakles filed a motion for summary judgment and a brief in opposition to Auto–Owners' motion for judgment on the pleadings. The trial court conducted a hearing on April 7, 2005, at which it denied Auto–Owners' motions for judgment on the pleadings and for summary judgment, and granted the Eakles' motion for summary judgment. The trial court expressly found that *the Eakles' Dodge Durango*[4] "was [an] underinsured vehicle at the time of the [underlying] accident, and subject to sustaining their burden of proof as to damages, the

---

4. Underinsurance coverage applies only if the *tortfeasor's* vehicle is an underinsured vehicle. *Allstate Ins. Co. v. Sanders*, 644 N.E.2d 884, 886 (Ind.Ct.App.1994). Thus, the critical inquiry before us is whether Weddel's vehicle, not the Eakles' Dodge Durango, was underinsured.

[Eakles] are entitled to a portion or all of [Auto–Owners' UIM] coverage." (Auto–Owners' App. 274). Auto–Owners now brings this interlocutory appeal.

### DECISION

Auto–Owners contends that the trial court erred in denying its motion for judgment on the pleadings and/or motion for summary judgment, and in granting the Eakles' motion for summary judgment. Auto–Owners claims that *Weddel's* vehicle was not underinsured and the Eakles were not entitled to UIM coverage because the Eakles, as multiple claimants under a single UIM endorsement, received all amounts actually available for payment from Weddel's liability insurer.

Specifically, Auto–Owners argues that because Weddel's insurer had paid the Eakles $500,000.00, a sum which was equivalent to the $500,000.00 per accident limit, Auto–Owners' underinsured motorist policy, Weddel's vehicle was not underinsured, and consequently, the Eakles are not entitled to UIM insurance proceeds. The Eakles counter that because their individual, per person payouts from Weddel's insurance company were less than $500,000.00 each, they are therefore eligible for additional UIM coverage up to the policy limits of $500,000.00 per accident.

■ Indiana Trial Rule 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." *McCall v. State of Indiana Dept. of Natural Resources Div. of Forestry*, 821 N.E.2d 924, 926 (Ind.Ct.App.2005). A Trial Rule 12(C) motion attacks the legal sufficiency of the pleadings. *Shepherd v. Truex*, 823 N.E.2d 320, 324 (Ind.Ct.App. 2005). Our review of a trial court's decision on a motion for judgment on the pleadings is de novo, and such will not be granted unless it is clear from the face of the complaint that under no circumstances could relief be granted. *McCall*, 821 N.E.2d at 926. Additionally, when considering a motion for judgment on the pleadings, "we deem the moving party to have admitted all facts well pleaded, and the untruth of his own allegations that have been denied." *Shepherd*, 823 N.E.2d at 324. All reasonable inferences are drawn in favor of the nonmoving party and against the movant. *Id.*

However, when we review a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court. We must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Old Romney Development Co. v. Tippecanoe County*, 817 N.E.2d 1282, 1285 (Ind.Ct.App.2004). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Zemco Mfg., Inc. v. Navistar Inter. Transp. Corp.*, 759 N.E.2d 239, 244 (Ind. Ct.App.2001).

■ We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56(C), (H). "Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party." *Old Romney Dev. Co.*, 817 N.E.2d at 1285. Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmov-

ant was not improperly denied his or her day in court. *Id.*

■ This case requires us to construe the meaning of a contract of insurance. If an insurance policy is clear and unambiguous, the language therein must be given its plain and ordinary meaning. *Grange Ins. Co. v. Graham,* 843 N.E.2d 597, 599 (Ind. Ct.App.2006). However, when the insurance contract is ambiguous, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured. *Id.*

■ At the core of this dispute is the question of whether Weddel's vehicle was underinsured. Indiana Code section 27–7–5–4(b) defines an underinsured vehicle as "an insured motor vehicle where the limits of coverage available for payment to the insured under all . . . policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident." The aim of UIM coverage is "to give the insured the recovery he or she would have received if the underinsured motorist [the tortfeasor] had maintained an adequate policy of liability insurance." *Corr v. American Family Ins.,* 767 N.E.2d 535, 540 (Ind.2002). UIM coverage is "designed to provide individuals with indemni-

fication in the event that negligent motorists are inadequately insured." *Id.* Our legislature did not intend, however, to require insurers to provide full indemnification to victims of underinsured motorists in all circumstances. *Allstate Ins. Co. v. Sanders,* 644 N.E.2d 884, 887 (Ind.Ct.App. 1994). "The language of I.C. 27–7–5–4(b) does not require full indemnification; instead, the statute's focus is on placing the insured in the position he would have occupied if the tortfeasor had liability coverage equal to his UIM limits." *Id.*

At odds here are two approaches for determining whether a vehicle is underinsured. Specifically, the parties disagree as to which insurance policy limits we must compare in making our determination. Auto–Owners urges us to compare the per accident limit of Weddel's bodily injury liability policy ($500,000.00) to the per accident limit of the Eakles' Auto–Owners UIM policy (also $500,000.00). The Eakles, on the other hand, favor comparing the per person limit of each Eakle's UIM coverage ($500,000) to the amount actually available for payment to each Eakle from Weddel's insurer ($245,000.00, $160,000.00, $90,000.00, and $5,000.00, respectively).[5]

We have previously held that where, as here, more than one person is injured in an accident, the tortfeasor's *per accident*

**5.** The Eakles contend that the proper comparison is between the amount of each Eakle's underinsured motorist coverage and the amount of the coverage limits actually available for payment to each Eakle from Weddel's coverage. In support, they cite *Corr* for the proposition that a vehicle is underinsured "if the amount actually available for payment to the insured from the tortfeasor's bodily injury liability policies is less than the policy limits of the insured's underinsured motorist coverage." *Corr,* 767 N.E.2d at 536. In *Corr,* our Supreme Court defined the "amount available" as "money actually present or ready for immediate use by the insured, not the amount potentially accessible." *Id.*

We find, however, that *Corr* is distinguishable from the instant facts. While there were multiple victims in *Corr,* only one of them was covered under the insurance policy at issue. *Corr,* 767 N.E.2d at 538; *Graham,* 843 N.E.2d at 600. Here, multiple claimants are seeking underinsurance coverage under one policy, a situation much more akin to the factual circumstances in *Sanders,* wherein we held that "the determinative comparison . . . where more than one claimant sought recovery under a single policy, was the per accident limits of the insured's and the tortfeasor's policies." *Sanders,* 644 N.E.2d at 886; *Graham,* 843 N.E.2d at 601.

liability limit controls, for purposes of determining whether a vehicle is underinsured. *Id.* at 886. In *Sanders,* we considered the Colorado Court of Appeals' approach to making this determination. Under this approach, the court applied either the per person or the per accident liability limit depending on the number of injured persons involved. The court reasoned that

> [a] policy providing $25,000 per person [and] $50,000 per accident coverage means that, in any one accident, if only one person is injured or killed, [the per person liability limit applies, and] the limit of liability is $25,000, but if two or more persons are injured or killed, [the per accident liability limit applies, and] the limits of liability is $50,000.

*Id.*

Persuaded by this rationale, we held in *Sanders* that to determine whether a tortfeasor is underinsured in a case involving multiple injured claimants, we must compare the per accident limit of the tortfeasor with the per accident limit of the insured's UIM coverage. *Id.* Auto–Owners favors the *Sanders* approach and contends that because the per accident limits of Weddel's and Auto–Owners' policies are identical ($500,000.00), and the Eakles received payment in the amount of $500,000.00, Weddel's vehicle was not underinsured. Thus, Auto–Owners urges us to conclude that the Eakles are not entitled to UIM coverage payments.

In support of its contention, Auto–Owners relies upon both *Sanders* and *Graham,* wherein we determined that when the tortfeasor's liability insurance company paid the claimants the entire per accident limit and that sum was equivalent to the per accident limit of the claimants' UIM policy,

the tortfeasor's vehicle was not underinsured and accordingly, the claimants were ineligible for underinsured motorist coverage. *Id.; Graham,* 843 N.E.2d at 600.

The facts in *Sanders* were as follows: Two men, the Sanderses, were injured in an accident. The tortfeasor's bodily injury liability policy's limits were $50,000 per person and $100,000 per accident. The tortfeasor's insurer paid the Sanderses $50,000.00 each for their injuries. However, because those payments did not adequately compensate them for their injuries, the Sanderses filed a claim with their insurer, Allstate, for underinsurance coverage. The Sanderses' Allstate underinsurance policy limit was $100,000 per accident. Allstate denied the Sanderses' claim arguing that the tortfeasor's policy's per accident limit ($100,000.00) was equal to the per accident limit of the Sanderses' UIM coverage ($100,000.00). Thus, Allstate contended, because the Sanderses had received the $100,000 sum from the tortfeasor's insurer, the tortfeasor's vehicle was not underinsured and the Sanderses were not entitled to underinsurance coverage payments.

Allstate moved for judgment on the pleadings, and the trial court granted its motion. On appeal, the Sanderses argued that because the tortfeasor's policy contained a $50,000 per-person limit, and their own Allstate policy contained a $100,000 per accident limit,[6] the tortfeasor's vehicle was underinsured by $50,000. We rejected their argument, finding that

> the determinative comparison in that circumstance, i.e., where more than one claimant sought recovery under a single policy, was the per-accident limits of the insured's and the tortfeasor's policies.

*Graham,* 843 N.E.2d at 600.

---

**6.** The Allstate policy contained no separate per-person limit. *Sanders,* 644 N.E.2d at 884;

Because those two amounts were the same in *Allstate Ins. Co. v. Sanders,* the court concluded the tortfeasor was not an underinsured vehicle.

*Graham,* 843 N.E.2d at 601.

Thereafter, in *Corr,* our Supreme Court held that to determine whether a tortfeasor's vehicle was underinsured where there is a single injured claimant, courts must look to the actual amount available to the insured from the tortfeasor's bodily injury liability policy and compare that amount to the policy limits of the insured's UIM motorist coverage. 767 N.E.2d at 536.

*Corr* involved a teenage passenger, Janel Corr, who died following a one-car accident. The vehicle's four other occupants sustained serious injuries. The driver of the vehicle, the tortfeasor, was insured under two separate and distinct insurance policies with bodily injury liability limits of $100,000.00 per person and $300,000.00 per accident. Each of these two insurance companies tendered $300,000.00, their per accident limits, to the trial court for allocation among the claimants. In the subsequent distribution, the Corrs (Janel's parents) each received $57,500.00, which did not adequately compensate them for their injuries.

The Corrs were divorced and held separate insurance policies with underinsurance policy limits of $100,000 per person and $300,000.00 per accident.[7] Mr. Corr filed a claim with his insurer for coverage

payments under the underinsured motorist endorsement of his policy; the insurance company denied the claim contending that the tortfeasor's vehicle was not underinsured. Mr. Corr filed suit, and the insurance company joined the former Mrs. Corr to the action and moved for summary judgment. The trial court granted the insurer's motion, finding that the tortfeasor was not underinsured. On appeal, we affirmed the trial court's judgment in an unpublished memorandum decision. Subsequently, our Supreme Court granted transfer.

Citing the underlying purpose of underinsurance coverage—which is "to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance"—the Supreme Court concluded that to determine whether the tortfeasor's vehicle was underinsured in *Corr,* the "proper comparison is between the amount of each Corr's UIM coverage and the amount of the coverage limits actually 'available for payment' to each Corr from [the tortfeasor's] coverage." *Id.* at 540. Thus, because the amount of $57,500.00 made available to each Corr was less than the limit of each Corr's UIM coverage of $100,000.00 for Mrs. Corr, and either $100,000.00 or $250,000.00 for Mr. Corr, the Supreme Court held that the tortfeasor's vehicle was underinsured, and that the Corrs were entitled to UIM coverage payments.[8]

---

**7.** Mr. Corr claimed that his UIM limits were higher than $100,000.00, but that his insurance agent had lowered them without his permission. This issue is not relevant to our resolution of the case at bar.

**8.** The Supreme Court also noted that its interpretation of the statute requiring UIM and uninsured motorist coverage might produce anomalous results. The Court stated, in part,

If, as here, there are multiple claimants they may reduce the 'amount available' to any single claimant below the minimum UIM coverage even if the limits if applied to only one claimant would be adequate. We conclude that the legislature has chosen to look to 'available' amounts, and accordingly accept this anomaly as less problematic than leaving the victim of an underinsured motorist worse off that the victim of a wholly uninsured motorist.

In *Graham,* a case that is much akin to the instant case, we rejected the argument that *Corr* implicitly overruled *Sanders.* The facts in *Graham* were as follows: Graham was operating a vehicle carrying four passengers, including the owner of the vehicle, Adams, when the vehicle was struck by the tortfeasor's vehicle. The tortfeasor's vehicle was operated by Hildenbrandt and owned by Mikuly.

Tortfeasor–Mikuly was insured under an automobile policy with liability limits of $100,000.00 per person and $300,000.00 per accident. Her insurance company paid to the five injured claimants its total per accident policy limit of $300,000.00. After the five claimants divided the sum among themselves, each received sums that did not fully compensate them for their injuries. Adams was insured under a Grange Insurance Company automobile policy with underinsured limits identical to those under the tortfeasor's policy, i.e., $100,000.00 per person and $300,000.00 per accident. The claimants sought underinsurance coverage payments under Adams' policy; however, Grange denied their claims, asserting that tortfeasor-Mikuly's vehicle was not an underinsured vehicle.

The claimants filed suit alleging breach of the insurance contract, and Grange filed a motion for summary judgment. The claimants filed a motion in opposition to summary judgment, in which they asked the court to grant summary judgment in their favor. The trial court denied Grange's motion for summary judgment, and granted the claimants' motion, holding that tortfeasor-Mikuly's vehicle was underinsured.

On appeal, Grange alleged the trial court's determination was error because "a per accident, limit-to-limit comparison between [the] appellees' insurance and the

*Corr,* 767 N.E.2d at 540.

tortfeasor's insurance reveal[ed] that the limits [were] equivalent; [and] therefore, the tortfeasor was not 'underinsured.'" *Graham,* 843 N.E.2d at 600. Grange cited our holding in *Sanders* for the proposition that a per accident, limit to limit comparison was proper where multiple injured parties were seeking coverage under the same policy.

The claimants, in turn, cited *Corr,* in support of their contention that

the question of whether the tortfeasor was an underinsured motorist must be determined not by comparing the insured's limits with the amount *theoretically* available under the tortfeasor's policy, but instead by examining what the Supreme Court termed 'the amount actually available' for payment to the insured under the tortfeasor's policy. The Court concluded that if the amount actually available to the individual insureds under the tortfeasor's policy was less than the insured's per-person policy limit, then the tortfeasor's vehicle is underinsured.

*Id.* at 600.

We were charged with determining which case, *Corr* or *Graham,* applied in the determination of whether the tortfeasor's vehicle was underinsured. Finding that the facts in *Graham* "combine[d] factual elements" of both *Corr* and *Sanders,* we deemed both cases to be instructive. Like *Graham, Corr* and *Sanders* "involve[d] multiple insureds whose individual damages, in the aggregate, exceeded the maximum per accident limit of the tortfeasor's liability coverage." *Id.* However, given the distinction between the cases, we hesitated to deem tortfeasor-Mikuly's vehicle underinsured.

In *Graham,* we determined that the Supreme Court's holding in *Corr* was limited

in its application to the specific circumstance in which only one of multiple accident victims is insured under the insurance policy at issue. We opined, in pertinent part,

> Although there were multiple victims in *Corr*, the legal question involved a policy covering only one of those victims. *Under those circumstances,* the Supreme Court held that 'if the amount actually available for payment to the insured from the tortfeasor's bodily injury liability policies is less than the policy limits of the insured's underinsured motorist coverage,' then the tortfeasor's vehicle was underinsured.

*Id.* at 601, emphasis added. Therefore, we concluded that where multiple claimants seek recovery under a single policy, the *Graham* and *Sanders* analysis must be employed, i.e., the determinative comparison is between the per accident limits of the insured's and the tortfeasor's policies.

Because of the aforementioned distinction between the cases, we held, in *Graham*, that *Corr* did not overrule *Sanders*. Consequently, we applied the *Sanders* approach in *Graham* and held that where multiple injured claimants seek to recover under a single UIM policy, the court will "look not only to the per-person limitation with respect to each individual claimant, but also to the per accident limit with respect to the total of all of the claims." *Id.* at 601–02.

■ The *Sanders* and *Graham* holdings are consistent with the policy justification for underinsured motorist coverage. Underinsured motorist coverage is intended to put the insured "in the position he would have occupied if the tortfeasor had liability coverage equal to [the insured's] underinsured motorist limits." *Sanders,* 644 N.E.2d at 887. "[T]he goal in situa-

tions such as this is to give the insured *at least the same* coverage as if his or her own underinsurance policy was the only one that applied." *Graham,* 843 N.E.2d at 602 (emphasis added).

The instant case is akin to *Sanders* and *Graham,* because it too involves multiple injured claimants seeking to recover under a single UIM policy. Accordingly, we employ a per accident, limit-to-limit comparison here. We will compare the per accident limit of tortfeasor-Weddel's policy to the per accident limit of the Eakles' underinsured motorist coverage under the Auto–Owners' policy.

The designated evidence demonstrates that the amount of $500,000.00 paid to the Eakles by tortfeasor-Weddel's insurer was *not less than, but equivalent to* the UIM limits available to the Eakles for a multiple person accident in the amount of $500,000.00 under their Auto–Owners policy. Thus, we find that Weddel's vehicle was not underinsured. The Eakles are not entitled to recover under the UIM provision of their policy. The trial court erred in denying Auto–Owners' motion for judgment on the pleadings and its alternative motion for summary judgment, and erred further in granting the Eakles' motion for summary judgment. We reverse the decision of the trial court and remand with instructions that the trial court grant summary judgment in favor of Auto–Owners.

Reversed and remanded with instructions.[9]

SHARPNACK, J., and ROBB, J., concur.

---

9. We note the Seventh Circuit's holding in

*Clark v. State Farm Mutual Automobile Ins.*

Magdalena **LOPEZ**, Appellant–
Defendant,

v.

**STATE of Indiana**, Appellee.

No. 45A03–0609–CR–00411.

Court of Appeals of Indiana.

July 17, 2007.

Co., 473 F.3d 708 (7th Cir.2007), regarding underinsured motorist coverage. We are not bound by that Court's determinations; however, we note this holding as persuasive authority. *Burk v. Heritage Food Serv. Equip., Inc.,* 737 N.E.2d 803, 812 n. 1 (Ind.Ct.App. 2000). In *Clark,* the Seventh Circuit was faced with facts much akin to those herein. Clark, her husband and their sons were injured following an automobile accident. At the time of the accident, the Clarks were driving a vehicle that belonged to Jerald and Martha Day. The Days' vehicle was insured under a State Farm liability policy. The tortfeasor, Akers, who negligently caused the accident, died from the injuries that he sustained in the crash. Akers was insured under a liability policy issued by American Family Mutual Insurance Company.

Tortfeasor–Akers' insurance policy contained liability limits of $100,000.00 per person and $300,000.00 per accident. The company paid its full per accident limit of $300,000.00 to the Clarks, allocating $100,000.00 each to Clark and her husband, and leaving $100,000.00 to be applied towards their sons, who received $75,000.00 and $25,000.00. With State Farm's consent, Clark accepted the settlement from Akers' insurance company. On behalf of her sons, Clark then filed a claim with State Farm seeking underinsurance benefits under the Days' policy. The Days' State Farm policy's UIM coverage provided a per person liability limit of $100,000.00 and a per accident liability limit of $300,000. State Farm denied Clark's claim on grounds that tortfeasor-Akers' vehicle was not an underinsured vehicle as defined by Indiana's underinsured motorist statute.

Clark filed suit against State Farm in state court. State Farm removed the case to the United States District Court for the Southern District of Indiana, which court granted summary judgment in favor of State Farm finding that Indiana's underinsured motor vehicle statute required the court to compare the

relevant limits in the claimant's UIM policy to the actual amount available under the other insurer's policy. Because all four members of the Clark family were injured in the accident, the district court looked to the amount actually available to the Clarks collectively under Akers' per accident liability limit of $300,000.00 and compared that sum to the UIM per accident coverage in the Days' State Farm policy of $300,000.00. The district court concluded that Akers' vehicle was not an underinsured vehicle because the per accident liability limit contained in Akers' insurance policy was equal to the State Farm policy's UIM per accident coverage.

On the children's ensuing appeal, they argued that because their individual recoveries ($75,000.00 and $25,000.00) were less than the State Farm policy's UIM per person liability limit ($100,000), they were, in fact, entitled to underinsured motorist coverage payments. Citing the underlying policy of underinsurance coverage as set out in *Sanders,* the Seventh Circuit noted our holding in *Graham,* namely, that "different approaches are necessary for claims involving multiple-injury claimants and claims involving single-injury claimants." *Id.* at 713. The Seventh Circuit agreed with our analysis in *Graham,* applied the *Graham* approach to the *Clark* facts. The Seventh Circuit found that the total amount available to Clarks under tortfeasor-Akers' insurance policy's per accident liability limit ($300,000.00) was equal to the sum that the Clarks could have recovered under the UIM per accident liability limit in the Days' State Farm policy. Because the potential per accident recovery was the same under both policies, the Seventh Circuit determined that tortfeasor-Akers was not an underinsured motorist. Accordingly, the Court affirmed the district court's grant of summary judgment and determined that the Clark children were not entitled to underinsurance coverage payments from State Farm.