PROGRESSIVE HALCYON INSUR-
ANCE COMPANY, Appellant–Cross
and Counter Claimant,

v.

Michael PETTY, Appellee–
Defendant/Cross and
Counter Claimant,

and

Autumn Petty, Appellee–Plaintiff/Cross
and Counter Claimant.

No. 48A02–0704–CV–331.

Court of Appeals of Indiana.

April 3, 2008.

Bradley D. Pippin, Law Offices of the Progressive Group of Insurance Companies, Indianapolis, IN, Attorney for Appellant.

David W. Craig, Scott A. Faultless, Craig Kelley & Faultless, Indianapolis, IN, Attorneys for Appellee Michael Petty.

John E. Eisele, Anderson, IN, Attorney for Appellee Autumn Petty.

## OPINION

CRONE, Judge.

### Case Summary

Progressive Halcyon Insurance Company ("Progressive") appeals the denial of its motion for summary judgment and the granting of the motions for summary judgment filed by Michael Petty and Autumn Petty on the issue of whether Michael and Autumn are entitled to underinsured motorist ("UIM") coverage under Autumn's policy with Progressive ("the Policy"). We reverse and remand with instructions to enter summary judgment in Progressive's favor.

### Issue

Are Michael and Autumn entitled to UIM coverage under the Policy?

### Facts and Procedural History[1]

The relevant facts are undisputed. On April 26, 2005, Autumn was driving her automobile northbound on Interstate 69 in Hamilton County, with her brother Michael as a passenger. An automobile driven by Summer Sears crossed the median and collided with Autumn's automobile, resulting in injuries to both Autumn and Michael.

At the time of the accident, Sears was covered by an insurance policy through GEICO Insurance with bodily injury liability limits of $50,000 per person and $50,000 per accident. Appellant's App. at 120. Autumn's Policy with Progressive has UIM limits of $50,000 per person and $50,000 per accident.[2] Id. at 136. The Policy's uninsured motorist limits are $25,000 per person and $50,000 per accident. Id. The Policy provides that these limits are the most that Progressive will pay regardless of the number of insureds. Id. at 143. Both Autumn and Michael are insureds under the Policy.

On July 11, 2006, Autumn filed a three-count complaint against Sears, Michael, and Progressive. Count I requested damages against Sears for her alleged negligence; Count II requested equitable division of the GEICO policy proceeds between Autumn and Michael; and Count III requested a declaratory ruling that Autumn is entitled to UIM coverage under the Policy. The trial court granted GEICO's motion to interplead its policy limits of $50,000. Autumn and Michael agreed to divide the funds, with Autumn to receive $15,000 and Michael to receive $35,000. Michael petitioned to withdraw the proceeds, which the court released in accordance with Autumn and Michael's agreement. The court subsequently dismissed Autumn's claims against Sears with prejudice. Progressive did not preserve its subrogation rights against Sears.

---

1. We remind Progressive's counsel that an appellant's statement of the case must contain page references to the record on appeal or appendix in accordance with Indiana Appellate Rule 22(C). Ind. Appellate Rule 46(A)(5). We thank Michael's counsel for including such page references in Michael's statement of the case.

2. GEICO's motion to interplead uses the phrase "per occurrence," Appellant's App. at 120, while the Policy uses the phrase "per accident." Id. at 136. We use both phrases interchangeably in this opinion.

The funds released to Autumn and Michael did not adequately compensate them for their injuries. Progressive filed a counterclaim against Autumn and a cross-claim against Michael, which asserted that they were not entitled to UIM coverage under the Policy. Michael answered Autumn's complaint and Progressive's cross-claim and asserted his own cross-claim against Progressive for UIM coverage under the Policy.

Progressive filed a motion for summary judgment against Autumn and Michael, which asserted that they were not entitled to UIM coverage under the Policy because the GEICO policy's per-accident limit for bodily injury liability was the same as the Policy's per-accident limit for UIM coverage, i.e., $50,000. Autumn and Michael filed cross-motions for summary judgment against Progressive on the UIM coverage issue. On March 21, 2007, the trial court issued an order denying Progressive's motion and granting Autumn's and Michael's cross-motions for summary judgment. The order reads in pertinent part as follows:

1. The limits of coverage available for payment to Plaintiff Autumn Petty from Summer Sears' liability policy was $15,000, thereby rendering the vehicle Summer Sears was operating at the time of the collision an underinsured motor vehicle pursuant to Indiana Code § 27–7–5–4.

2. Indiana Code § 27–7–5–2 requires that Progressive must provide underinsured motorist coverage in limits of not less than fifty thousand dollars ($50,000) to Plaintiff Autumn Petty, which means that there is $35,000 of underinsured bodily injury coverage available to Plaintiff Autumn Petty under [the Policy].

3. The limits of coverage available for payment to Defendant Michael Petty from Summer Sears' liability policy was $35,000, thereby rendering the vehicle Summer Sears was operating at the time of the collision an underinsured motor vehicle pursuant to Indiana Code § 27–7–5–4. Indiana Code § 27–7–5–2 requires that Progressive must provide underinsured motorist coverage in limits of not less than fifty thousand dollars ($50,000) to Defendant Michael Petty, which means that there is $15,000 of underinsured bodily injury coverage available to Michael Petty under [the Policy].

*Id.* at 11–12. On May 16, 2007, the trial court certified the order as a final and appealable judgment. This appeal ensued.

### Discussion and Decision

Progressive contends that the trial court erred in denying its motion and granting Autumn's and Michael's cross-motions for summary judgment on the UIM coverage issue. Our standard of review is well settled:

When reviewing the grant or denial of summary judgment, this Court applies the same legal standard as a trial court: summary judgment is appropriate where no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. The standard of review is not altered by cross motions for summary judgment on the same issues. A party appealing the denial of summary judgment carries the burden of persuading this Court that the trial court's decision was erroneous. Moreover, when the material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts; and, if the issue presented is purely a question of law, we review the matter de novo. In addition, our standard of review is not changed by the trial court's entry of findings of fact and

conclusions thereon. Although the findings and conclusions provide valuable insight into the trial court's decision, they are not binding upon this Court. *C.M.L. ex rel. Brabant v. Repub. Servs., Inc.*, 800 N.E.2d 200, 202 (Ind.Ct.App. 2003) (citations omitted), *trans. denied* (2004).

We begin our discussion with the definition of "underinsured motor vehicle" in Indiana Code Section 27–7–5–4(b):

> For the purpose of this chapter, the term underinsured motor vehicle, subject to the terms and conditions of such coverage, includes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured *are less than* the limits for the insured's underinsured motorist coverage at the time of the accident, but does not include an uninsured motor vehicle as defined in subsection (a).[3]

(Emphasis added.)

Indiana Code Section 27–7–5–2 governs the minimum UIM coverage limits that insurers must make available and sell or provide to their insureds and provides in pertinent part:

> (a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person

and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:

> . . . .
>
> (2) *in limits for bodily injury or death not less than those set forth in IC 9–25–4–5* under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. *However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000).* At the insurer's option, the bodily injury liability provisions of the insured's policy may be required to be equal to the insured's underinsured motorist coverage. *Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000)* . . . . Uninsured motorist coverage or underinsured motorist coverage may be offered by an insurer in an amount exceeding the lim-

---

**3.** *See* Ind.Code § 27–7–5–2(a) ("For the purpose of this chapter, the term uninsured motor vehicle, subject to the terms and conditions of such coverage, means a motor vehicle without liability insurance or a motor vehicle not otherwise in compliance with the financial responsibility requirements of IC 9–25 or any similar requirements applicable under the law of another state, and includes an insured motor vehicle where the liability insurer of the vehicle is unable to make payment with respect to the legal liability of its insured within the limits specified in IC 9–25–4–5 because of insolvency.").

its of liability specified in the bodily injury and property damage liability provisions of the insured's policy.

(Emphases added.) Indiana Code Section 9–25–4–5 provides in pertinent part that "the minimum amounts of financial responsibility are as follows: (1) Subject to the limit set forth in subdivision (2), twenty-five thousand dollars ($25,000) for bodily injury to or the death of one (1) individual. (2) Fifty thousand dollars ($50,000) for bodily injury to or the death of two (2) or more individuals in any one (1) accident."

Our supreme court has stated that Indiana Code Section 27–7–5–2

> is a mandatory coverage, full-recovery, remedial statute. It is directed at insurers operating within Indiana and its provisions are to be considered a part of every automobile liability policy the same as if written therein. Moreover, even where a given policy fails to provide such uninsured motorist coverage, the insured is entitled to its benefits unless expressly waived in the manner provided by law.

*United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455, 460 (Ind.1999) (citations, quotation marks, and brackets omitted). More generally, the court has stated that the underlying purpose of UIM coverage "is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance." *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 540 (Ind.2002). To the extent an insured's policy provides "less coverage than required by Indiana law, the law mandates that the

coverage be expanded to the statutory requirement." *Id.* at 541.

■ Relying on *Allstate Insurance Co. v. Sanders,* 644 N.E.2d 884 (Ind.Ct.App. 1994), *Grange Insurance Co. v. Graham,* 843 N.E.2d 597 (Ind.Ct.App.2006), *trans. denied,* and *Auto–Owners Insurance Co. v. Eakle,* 869 N.E.2d 1244 (Ind.Ct.App.2007), *trans. denied,* Progressive asserts that because the UIM per-accident limits of the Policy—under which both Autumn and Michael are insureds—are identical to the bodily injury liability per-accident limits under the GEICO policy, i.e., $50,000, Sears's vehicle was not underinsured pursuant to the Policy and therefore Autumn and Michael are not entitled to UIM coverage. In response, Autumn and Michael assert that this Court's decisions in *Sanders, Graham,* and *Eakle* impermissibly conflict with our supreme court's decision in *Corr,* which they claim supports the trial court's determination that Sears's vehicle was underinsured pursuant to the Policy and that they are therefore entitled to UIM coverage. We believe that the holdings in *Sanders, Graham,* and *Eakle* are consistent with *Corr* and that all four cases support Progressive's argument that Sears's vehicle was not underinsured pursuant to the Policy and that therefore Autumn and Michael are not entitled to UIM coverage.

We agree with (and cannot improve upon) Judge Friedlander's succinct and cogent analysis of *Sanders* and *Corr* in *Graham,* 843 N.E.2d 597.[4] In that case, the tortfeasor, Mikuly, was insured under a policy with liability limits of $100,000 per person and $300,000 per accident. The owner of the other vehicle, Adams, was

---

4. The Seventh Circuit Court of Appeals likewise found *Graham*'s analysis persuasive in a factually similar case involving a motor vehicle collision in Indiana. *See Clark v. State Farm Mut. Auto. Ins. Co.,* 473 F.3d 708, 714 (7th Cir.2007) ("The Court of Appeals of

Indiana's analysis in *Graham* is thoroughly reasoned and soundly decided. We thus find that the Supreme Court of Indiana likely would apply the same reasoning if faced with the issues presented in *Graham.* Accordingly, we apply that reasoning here.").

insured under a Grange policy with identical UIM limits. Mikuly's insurer paid the per-accident policy limits of $300,000, which was divided among the five occupants of Adams's vehicle and their spouses ("Appellees"), such that each received less than the $100,000 per-person limits of Grange's policy. Appellees sought UIM coverage under Grange's policy, claiming that Mikuly's vehicle was underinsured. Grange determined otherwise and denied coverage. The trial court denied Grange's summary judgment motion and granted summary judgment in favor of Appellees.

Grange appealed, and Judge Friedlander addressed the UIM coverage issue as follows:

> Grange contends that underinsured motorist coverage is not available to Appellees because a per-accident, limit-to-limit comparison between Appellees' insurance and the tortfeasor's insurance reveals that the limits are equivalent; therefore, the tortfeasor was not "underinsured." Citing *Allstate Ins. Co. v. Sanders*, 644 N.E.2d 884 (Ind.Ct.App. 1994), Grange further contends that a per-accident, limit-to-limit comparison is proper in this situation because multiple injured parties are seeking coverage under the same policy. In *Allstate*, this court determined that when two injured claimants received, in the aggregate, the per-accident limit from the tortfeasor in an amount equal to the per-accident underinsured motorist limit of their own insurance, the tortfeasor was not "underinsured" and therefore they were not entitled to underinsured motorist insurance proceeds.

> Appellees counter with authority they claim compels the opposite result. Citing *Corr v. American Family Ins.*, 767 N.E.2d 535, 539 (Ind.2002), Appellees contend the question of whether the tortfeasor was an underinsured motorist

must be determined not by comparing the insured's limits with the amount *theoretically* available under the tortfeasor's policy, but instead by examining what the Supreme Court termed "the amount actually available" for payment to the insured under the tortfeasor's policy. The Court concluded that if the amount actually available to the individual insureds under the tortfeasor's policy was less than the insured's per-person policy limit, then the tortfeasor's vehicle is underinsured. Thus, the question as framed by the parties is which of the two applies, *Allstate Ins. Co. v. Sanders*, 644 N.E.2d 884 or *Corr v. American Family Ins.*, 767 N.E.2d 535? We conclude that both cases are instructive, because the facts of this case combine factual elements of both *Corr* and *Allstate Ins. Co.*

Superficially, both *Corr* and *Allstate Ins. Co.* involve multiple insureds whose individual damages, in the aggregate, exceeded the maximum per-accident limit of the tortfeasor's liability coverage. For purposes of deciding the issue before us, the same is true in the instant case. The question in those cases and this is, does such render the tortfeasor's vehicle an underinsured motor vehicle? *Corr* answered that question in the affirmative. In that case, though, the facts were somewhat different from those before us in the instant case.

In *Corr*, although several parties were injured or killed, the policy at issue covered only one of the accident victims. The parents of that victim, who was killed, received their portion of the proceeds from the tortfeasor's insurer, which paid the full limits of the tortfeasor's policy. Those limits were divided among several victims, including the decedent's parents, and did not adequately compensate the decedent's parents. Moreover, the amount paid to the

parents was less than the per-accident limit of their own separate underinsurance policies with American Family Insurance. Therefore, each of them submitted a claim with American Family under their respective underinsured motorist policies. American Family denied those claims on grounds that the tortfeasor's vehicle was not underinsured. The Supreme Court determined that the tortfeasor's vehicle *was* underinsured because the insureds' policies provided underinsured limits that exceeded the amount paid to the parents by the tortfeasor. The amount received from the tortfeasor, though less than the per-person limit, was the maximum amount available from that source because the per-accident limit of the tortfeasor's policy had to be split among several claimants.

Although there were multiple victims in *Corr*, the legal question involved a policy covering only one of those victims. Under those circumstances, the Supreme Court held that "if the amount actually available for payment to the insured from the tortfeasor's bodily injury liability policies is less than the policy limits of the insured's underinsured motorist coverage[,]" then the tortfeasor's vehicle was underinsured. *Corr v. Shultz*, 767 N.E.2d 541 (Ind.2002).

Unlike the factual setting present in *Corr*, the one in the instant case involves multiple claimants under a single policy. This situation is more akin to the one present in *Allstate Ins. Co. v. Sanders*, 644 N.E.2d 884. There, two men (the Sanderses) were injured in a traffic accident. The tortfeasor's insurer paid the liability policy limits of $50,000 per person and $100,000 per accident to the Sanderses, but those limits did not fully compensate them for their injuries. Therefore, the Sanderses filed a claim against their own insurer, Allstate, under the underinsurance portion of that policy. The Allstate policy limit was $100,000 per accident. Allstate denied the claim upon grounds that its limit of $100,000 per accident was equal to the per-accident limit of the tortfeasor's policy, and therefore the tortfeasor's vehicle was not an underinsured motor vehicle. The trial court granted the motion and the Sanderses appealed. The Sanderses argued that because the tortfeasor's policy contained a $50,000 per-person limit, and their own Allstate policy contained a $100,000 per-accident limit (the Allstate policy apparently contained no separate per-person limit), the tortfeasor's vehicle was underinsured by $50,000. This court rejected that argument, concluding that the determinative comparison in that circumstance, i.e., where more than one claimant sought recovery under a single policy, was the per-accident limits of the insured's and the tortfeasor's policies. Because those two amounts were the same in *Allstate Ins. Co. v. Sanders*, the court concluded the tortfeasor was not an underinsured vehicle.[5]

**5.** As noted by Autumn and Michael in this appeal and by our supreme court in *Corr*, the *Sanders* court relied in part on a Colorado UIM statute that is worded differently from Indiana Code Section 27–7–5–4. *See Corr*, 767 N.E.2d at 539 ("The Colorado statute provides: 'An underinsured motor vehicle is a land motor vehicle [which] is insured . . . but the limits of liability for bodily injury or death . . . are: (a) Less than the limits for uninsured motorist coverage under the insured's policy.' Colo.Rev.Stat. § 10–4–609(4) (2001). Thus, the statute expressly requires a limits-to-limits comparison. The Indiana statute turns on the amount of the 'coverage limits available for payment to the insured' not the overall coverage limits of the policy. Indiana's UIM statute does not express this clear preference for limits-to-limits comparison. Instead it uses the phrase 'available for payment to the in-

*Corr v. American Family Ins.* did not overrule *Allstate Ins. Co. v. Sanders.* Indeed, the Supreme Court acknowledged as much in stating, "[i]n [*Allstate Ins. Co. v. Sanders* ] both injured parties were insured by the same UIM policy. *Under those circumstances the per accident limits may have been relevant.*" *Corr v. American Family Ins.*, 767 N.E.2d at 538 (internal citation omitted) (emphasis supplied). Reading *Corr* and *Allstate Ins. Co.* together, a guiding principle emerges, and that principle was stated succinctly in *Allstate Ins. Co.*, viz., "the [uninsured/underinsured motorist coverage] statute's focus is on placing the insured in the position he would have occupied if the tortfeasor had liability coverage equal to [the insured's] underinsured motorist limits." *Allstate Ins. Co. v. Sanders*, 644 N.E.2d at 887. Although the Supreme Court did not utilize the above language, its holding is consistent with this precept. Indeed, this comports with the statutory definition of "underinsured motor vehicle" which "includes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident[.]" Ind.Code Ann. § 27–7–5–4(b)    (West,    PREMISE through 2005 1st Reg. Sess.).

Applying this principle to the instant case, all of the individual appellees in this action seek to recover under a single underinsured motorist policy. Accordingly, we look not only to the per-person limitation with respect to each individual claimant, but also to the per-

accident limit with respect to the total of all of the claims. If Appellees had recovered only under the Adams policy, their total recovery would have been capped at $300,000. In this scenario, assuming each of the five claimants (counting only the occupants of the Adams vehicle, and not their spouses) was entitled to the same amount, their individual recoveries would be capped at $60,000, which represents one fifth of the per accident limit of Adams's policy. That is precisely the same amount they recovered under Mikuly's liability insurance policy. The goal here, as the Supreme Court indicated, is to "give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance [.]" *Corr v. American Family Ins.*, 767 N.E.2d at 540. As discussed above, "adequate" in this context is defined by the insured's underinsurance policy. Paraphrasing that statement, and consistent with *Corr* and *Allstate Ins. Co.*, we conclude that the goal in situations such as this is to give the insured at least the same coverage as if his or her own underinsurance policy was the only one that applied. In this case, if only Adams's policy applied (i.e., if Mikuly was uninsured), the total amount available to all appellees combined would be $300,000. That was precisely the amount distributed under Mikuly's policy. Therefore, Mikuly's was not an underinsured vehicle, and Appellees were not entitled to collect pursuant to the underinsured motorist provision of Adams's policy. The trial court erred in ruling otherwise. We reverse the *decision of the trial court and remand*

---

sured' to describe the coverage limits to which it is referring."). That said, *Corr* strongly suggests, and we believe, that the *Sanders* court's reliance on the Colorado stat-

ute does not affect the validity of its holding under the facts of that case. Consequently, we do not consider this matter further.

with instructions to grant Grange Mutual Casualty Company's motion for summary judgment.

*Id.* at 600–02. Appellees filed a petition for transfer, which our supreme court unanimously denied.

In *Eakle,* 869 N.E.2d 1244, the most recent case cited by Progressive, David Eakle and his parents were injured in a vehicular accident by tortfeasor Weddel. David's medical expenses exceeded $20,000, and the cost of his mother's and father's care exceeded $150,000 and $120,000, respectively. David's wife filed a loss of consortium claim. Weddel's insurer distributed its per-accident policy limits of $500,000 as follows: $245,000 to David's mother, $160,000 to David's father, $90,000 to David, and $5000 to David's wife. All four Eakles were insured under an Auto–Owners policy with UIM limits of $500,000 per person and $500,000 per accident. The Eakles sought UIM coverage under the policy, and Auto–Owners denied the claim. On summary judgment, the trial court ruled in favor of the Eakles.

On appeal, Judge Darden stated,

At odds here are two approaches for determining whether [Weddel's] vehicle is underinsured. Specifically, the parties disagree as to which insurance policy limits we must compare in making our determination. Auto–Owners urges us to compare the per accident limit of Weddel's bodily injury liability policy ($500,000.00) to the per accident limit of the Eakles' Auto–Owners UIM policy (also $500,000.00). The Eakles, on the other hand, favor comparing the per person limit of each Eakle's UIM coverage ($500,000) to the amount actually available for payment to each Eakle from Weddel's insurer ($245,000.00, $160,000.00, $90,000.00, and $5,000.00, respectively).

*Id.* at 1249 (footnote omitted). Judge Darden then considered *Sanders, Corr,* and *Graham* and concluded his analysis as follows:

The *Sanders* and *Graham* holdings are consistent with the policy justification for underinsured motorist coverage. Underinsured motorist coverage is intended to put the insured "in the position he would have occupied if the tortfeasor had liability coverage equal to [the insured's] underinsured motorist limits." *Sanders,* 644 N.E.2d at 887. "[T]he goal in situations such as this is to give the insured *at least the same* coverage as if his or her own underinsurance policy was the only one that applied." *Graham,* 843 N.E.2d at 602 (emphasis added).

The instant case is akin to *Sanders* and *Graham,* because it too involves multiple injured claimants seeking to recover under a single UIM policy. Accordingly, we employ a per accident, limit-to-limit comparison here. We will compare the per accident limit of tortfeasor-Weddel's policy to the per accident limit of the Eakles' underinsured motorist coverage under the Auto–Owners' policy.

The designated evidence demonstrates that the amount of $500,000.00 paid to the Eakles by tortfeasor-Weddel's insurer was not less than, but equivalent to the UIM limits available to the Eakles for a multiple person accident in the amount of $500,000.00 under their Auto–Owners policy. Thus, we find that Weddel's vehicle was not underinsured. The Eakles are not entitled to recover under the UIM provision of their policy. The trial court erred in denying Auto–Owners' motion for judgment on the pleadings and its alternative motion for summary judgment, and erred further in granting the Eakles' motion for summary judgment. We re-

verse the decision of the trial court and remand with instructions that the trial court grant summary judgment in favor of Auto–Owners. *Id.* at 1253. The Eakles filed a petition for transfer, which our supreme court unanimously denied. Although Indiana Appellate Rule 58(B) provides that "[t]he denial of a Petition to Transfer shall have no effect other than to terminate the litigation between the parties in the Supreme Court[,]" we find it telling that our supreme court did not overrule either *Graham* or *Eakle* when given an opportunity to do so.

In this case, as in *Sanders, Graham*, and *Eakle*, we are dealing with only two policies—the plaintiff's and the tortfeasor's—and with two injured parties insured under the plaintiff's UIM policy. "Accordingly, we look not only to the per-person limitation with respect to each individual claimant, but also to the per-accident limit with respect to the total of all of the claims." *Graham*, 843 N.E.2d at 601–02. If Autumn and Michael had recovered only under Autumn's policy, i.e., if Sears had been uninsured, their total recovery would have been capped at $50,000. That is precisely the same amount they actually recovered under Sears's liability insurance policy. As such, Sears's vehicle was not an underinsured motor vehicle under either the Policy or Indiana Code Section 27–7–5–4(b). *Cf.* Ind.Code § 27–7–5–4(b) (defining "underinsured motor vehicle" in pertinent part as "an insured motor vehicle where the limits of coverage available for pay-

ment to the insured under all bodily injury liability policies covering persons liable to the insured *are less than* the limits for the insured's underinsured motorist coverage at the time of the accident") (emphasis added).[6]

■ The question remains, however, whether the Policy provides less coverage than required by Indiana Code Section 27–7–5–2(a). Autumn and Michael contend that it does. Specifically, Michael argues that unlike the recoveries by the insureds in *Sanders, Graham*, and *Eakle*, his and Autumn's recoveries of $35,000 and $15,000 respectively are "less than the minimum limits of liability for [UIM] coverage in Indiana," which Michael asserts is $50,000 per person. Michael's Br. at 7 (citing Ind.Code § 27–7–5–2(a)).

■ Our response to Michael's argument is threefold. First, we disagree with his assertion that the statutory minimum limits for UIM coverage is $50,000 *per person*. To reiterate, Indiana Code Section 27–7–5–2(a) first states that insurers must make available UIM coverage "in limits for bodily injury or death not less than those set forth in IC 9–25–4–5[.]" The limits set forth in Indiana Code Section 9–25–4–5 are "twenty-five thousand dollars ($25,000) for bodily injury to or the death of one (1) individual" and "[f]ifty thousand dollars ($50,000) for bodily injury to or the death of two (2) or more individuals in any one accident." Section 27–7–5–2(a) then states that UIM coverage "must be made available in limits of" and that "[i]nsurers may not sell or provide [UIM]

---

**6.** Both Autumn and Michael fault Progressive for not citing *Progressive Insurance Co. v. Bullock*, 841 N.E.2d 238 (Ind.Ct.App.2006), *trans. denied.* Michael goes so far as to say that "Progressive wants to avoid the case with its name on it because the holding and outcome [are] directly contrary to the position it is taking in this case." Michael's Br. at 20. We find *Progressive* inapplicable because in that case, unlike in *Sanders, Graham*, and *Eakle*, the occupants of the vehicle struck by the tortfeasor were not insured under the same UIM policy. *See id.* at 244 (finding *Sanders* inapplicable because vehicle's occupants "were not insured under the same UIM policy."). As such, we need not address *Progressive* further.

coverage in an amount less than fifty thousand dollars ($50,000)."

■ "In construing a statutory provision, we must consider the statute as an entirety, with each part being viewed not as an isolated fragment but with reference to all the other companion provisions." *Hinshaw v. Bd. of Comm'rs of Jay County*, 611 N.E.2d 637, 638 (Ind.1993). "Every word must be given effect and meaning where possible, and no part is to be held meaningless if it can be reconciled with the rest of the statute." *Marshall & Ilsley Trust Co. v. Woodward*, 848 N.E.2d 1175, 1181 (Ind.Ct.App.2006). Additionally, "statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce an harmonious statutory scheme." *Orndorff v. New Albany Housing Auth.*, 843 N.E.2d 592, 595 (Ind.Ct.App.2006), *trans. denied.*

Construing Indiana Code Sections 27–7–5–2(a) and 9–25–4–5 together, as we must, we conclude that the $50,000 threshold mentioned in Indiana Code Section 27–7–5–2(a) refers only to the $50,000 *per-accident* limits mentioned in Indiana Code Section 9–25–4–5 and that the minimum *per-person* UIM coverage is $25,000. To conclude otherwise would render Section 27–7–5–2(a) internally inconsistent and render meaningless its incorporation by reference of the "limits set forth in IC 9–25–4–5[.]" [7]

Next, we observe that Autumn recovered less than $25,000 only because she agreed to split the $50,000 in GEICO policy proceeds $15,000/$35,000 in Michael's favor. Sound public policy dictates that insureds may not unilaterally trigger UIM coverage via such agreements, which increase both the potential for collusion between insureds and the potential for insurers' exposure to claims for which there would otherwise be no coverage. Consequently, we conclude that under these circumstances, the Policy does not provide less coverage than required by Indiana Code Section 27–7–5–2(a).

As a third and final consideration, we note that although Indiana Code Section

---

7. In *Elliott v. Allstate Insurance Co.*, 881 N.E.2d 662 (Ind.2008), Amanda, Amber, and Austin Elliott were injured in a collision with an uninsured vehicle. Amanda, the driver, had an Allstate policy with uninsured motorist coverage "in the amount of $25,000 for 'each person' and $50,000 for 'each accident.'" *Id.* at 663. Amanda was severely injured and settled with Allstate for the "each person" limit of $25,000. Amber and Austin sought coverage for their emotional distress at witnessing Amanda's injuries, which Allstate denied on the basis that "Amber's and Austin's claims for emotional distress were caused by Amanda's injuries, they were included in the 'each person' limit of liability for Amanda's bodily injury claim." *Id.* "The trial court agreed with Allstate's position but the Court of Appeals reversed." *Id.* On transfer, our supreme court determined that Allstate's policy

> contravene[d] the requirement of the Indiana uninsured and underinsured motorist insurance statute that automobile in-

surance policies provide "coverage ... for ... persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles." Ind.Code § 27–7–5–2(a)(1) (2004). The policy does so by effectively reducing the amount of damages the insureds suffering emotional distress are entitled to collect by the amount of damages that the insured who suffered catastrophic physical injuries collects.

*Id.* at 664. The court went on to say, "Because a clause in derogation of the Indiana uninsured motorist statute is unenforceable, Amber and Austin are entitled to a separate per person limitation of $25,000, subject, however, to the per accident limitation of $50,000." *Id.* at 665 (citation omitted). Although it does not appear that either Amber or Austin claimed that the Allstate policy provided less coverage than required by Indiana Code Section 27–7–5–2(a), we believe that *Elliott* supports our interpretation of that statute in this case.

27–7–5–4 is a full-recovery statute, our supreme court has acknowledged that "a full-recovery statute will not necessarily assure full indemnification for all potential damage to all potential insureds[.]" *Corr,* 767 N.E.2d at 540. In sum, we conclude that Michael and Autumn are not entitled to UIM coverage under the Policy. Therefore, we reverse and remand with instructions to grant summary judgment in Progressive's favor.

Reversed and remanded.

BAILEY, J., and NAJAM, J., concur.