Hannah LAKES, Appellant–Plaintiff,

v.

**GRANGE MUTUAL CASUALTY COMPANY, Appellee–Defendant.**

No. 89A05–1009–CT–549.

Court of Appeals of Indiana.

Feb. 28, 2011.

---

David W. Craig, Scott A. Faultless, Craig Kelley & Faultless, Indianapolis, IN, Attorneys for Appellant.

Carolyn M. Trier, Trier Law Office, Fort Wayne, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Hannah Lakes (Hannah), appeals the trial court's summary judgment in favor of Appellee–Defendant, Grange Mutual Casualty Company (Grange Mutual), finding that no

underinsured motorist coverage is available to Hannah.[1]

We reverse.

## ISSUE

Hannah raises two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred when it found that Hannah is not entitled to underinsured motorist coverage (UIM) under Grange Mutual's policy.

## FACTS AND PROCEDURAL HISTORY

Jerry Lakes (Jerry) and LuAnn Lakes (LuAnn) are husband and wife, residing in Fayette County, Indiana. They have two daughters: Anitra Lakes (Anitra) and Hannah. On September 10, 2004, James Isaacs' vehicle collided with the vehicle driven by Anitra. Twelve-year-old Hannah, LuAnn, and Dustin Gavin were passengers in Anitra's vehicle and all sustained incapacitating injuries. On January 6, 2005, LuAnn, Jerry, Anitra, and Hannah (collectively, the Lakes) filed a complaint against Isaacs, alleging that Isaacs negligently operated his vehicle, and against Grange Mutual, seeking underinsured motorist benefits. Isaacs' insurance policy with Viking Insurance Company of WI (Viking) had a per person liability limit of $25,000 and a per accident liability limit of $50,000. Viking paid out its total liability policy limit of $50,000 per accident, which was divided between LuAnn, Jerry, Anitra, and Hannah. Hannah received $5,100 in settlement of her claim against Isaacs; this amount did not fully compensate her for her injuries.

The Lakes initially sought underinsured motorist coverage from Grange Mutual under both Jerry's and Anitra's personal auto insurance policies. On February 16, 2010, Grange Mutual filed its motion for summary judgment, designation of evidence, and memorandum in support of its motion, claiming that no UIM coverage was available under either policy. On May 5, 2010, LuAnn, Jerry, and Anitra moved to dismiss their claims with prejudice, which was granted by the trial court the following day. Accordingly, only Hannah remained in the suit, seeking coverage under Anitra's Grange Mutual's policy, which has underinsured motorist bodily injury limits of liability of $50,000 each person and $50,000 each accident. On May 6, 2010, Hannah filed her objection, memorandum in opposition, and designation of evidence in response to Grange Mutual's motion for summary judgment. On June 2, 2010, the trial court conducted a hearing on Grange Mutual's motion. On August 18, 2010, the trial court granted summary judgment to Grange Mutual, finding as a matter of law that Isaacs' vehicle is not underinsured and therefore Hannah is not entitled to UIM benefits under Anitra's policy.

Hannah now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Hannah contends that because Isaacs was underinsured at the time of the collision, pursuant to Indiana Code section 27–7–5–2(a), she is entitled to UIM coverage under Grange Mutual's policy. Thus, she maintains that the trial court erred by entering summary judgment for Grange Mutual.

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of mate-

---

1. We held oral argument in the instant cause on January 13, 2011 at the Indiana Court of Appeals Courtroom in Indianapolis, Indiana. We thank counsel for their eloquent advocacy and insightful comments.

rial fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley,* 891 N.E.2d 604, 607 (Ind. Ct.App.2008), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607–08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

▮ We observe that in the present case, the trial court entered detailed and helpful findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. UIM Coverage Limits

We commence our analysis with the definition of "underinsured motor vehicle," as included in Indiana Code section 27–7–5–4(b):

[T]he term underinsured motor vehicle, subject to the terms and conditions of such coverage, includes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident, but does not include an uninsured motor vehicle as defined in subsection (a).

Indiana Code section 27–7–5–2 governs the minimum UIM coverage limits that insurers must make available and sell or provide to their insureds. The statute provides, in pertinent part:

(a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:

. . .

(2) in limits for bodily injury or death not less than those set forth in [I.C. § ] 9–25–4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for

separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. However underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000). At the insurer's option, the bodily injury liability provisions of the insured's policy may be required to be equal to the insured's underinsured motorist coverage. Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000).... Uninsured motorist coverage or underinsured motorist coverage may be offered by an insurer in an amount exceeding the limits of liability specified in the bodily injury and property damage liability provisions of the insured's policy.

Indiana Code section 9–25–4–5, which stipulates the monetary limits for bodily injury or death, provides in pertinent part, that:

> The minimum amounts of financial responsibility are as follows: (1) subject to the limit set forth in subdivision (2), twenty-five thousand dollars ($25,000) for bodily injury to or the death of one (1) individual; (2) fifty thousand dollars ($50,000) for bodily injury to or the death of two (2) or more individuals in any one (1) accident.

Focusing on this statutory scheme, Hannah now contends that Indiana Code section 27–7–5–4(b) requires a comparison of $25,000 per person bodily injury liability limit provided by Isaacs' insurance policy to the $50,000 per person UIM limit under Anitra's policy. Under this comparison, Hannah claims that Isaacs' vehicle was underinsured because Isaacs' per person liability limit was less than Anitra's Grange Mutual per person UIM policy limit. In response, Grange Mutual asserts

that Hannah's reliance on the per person comparison is misplaced, and maintains that because more than one person was injured in the collision, the tortfeasor's per accident liability limit is controlling. Accordingly, at odds are two approaches to determine whether a vehicle is underinsured: while Hannah favors the per person liability limit comparison, Grange Mutual urges us to adopt the per accident liability limit. Phrased as such, the issue before us requires us to interpret the statute.

A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. *Allstate Ins. Co. v. Sanders,* 644 N.E.2d 884, 885 (Ind.Ct.App.1994). In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. *Id.* at 885–886. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Id.* at 886. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.* Also, we presume words appearing in the statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent a clear manifested purpose to do otherwise. *Id.*

 Indiana Code § 27–7–5–2 is a mandatory coverage, full-recovery, remedial statute. *United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455, 460 (Ind.1999). It is directed at insurers operating within Indiana and its provisions are to be considered a part of every automobile liability policy the same as if written therein. *Id.* Underinsured motorist coverage is designed to provide individuals with indemni-

fication in the event negligent motorists are not adequately insured for damages that result from motor vehicle accidents, and has generally been integrated into a given state's uninsured motorist legislation by modifying the definition of an "uninsured motorist." *Id.* at 459. As such, it serves to promote the recovery of damages for innocent victims of auto accidents with underinsured motorists. *Id.* Given the remedial nature of this objective, underinsured motorist legislation is to be liberally construed. *Id.* at 459–60.

The limits-to-limits comparison—be it per person or per accident—for the application of UIM coverage pursuant to I.C. § 27-7-5-2 has been the subject of an impressive body of current case law and both parties draw from this wealth of cases to support their respective positions. The seminal cases in this area are *Allstate Ins. Co. v. Sanders,* 644 N.E.2d 884 (Ind.Ct. App.1994); *Corr v. American Family Ins.,* 767 N.E.2d 535 (Ind.2002); and *Grange Ins. Co. v. Graham,* 843 N.E.2d 597 (Ind. Ct.App.2006), *trans. denied.*

In the first major case on the topic, *Sanders,* Phillip and Robert Sanders were injured in a traffic accident. *Sanders,* 644 N.E.2d at 885. The tortfeasor's insurer paid the liability policy limits of $50,000 per person and $100,000 per accident to the Sanderses, but those limits did not fully compensate them for their injuries. *Id.* Therefore, the Sanderses filed a claim against their own insurer, Allstate, under the underinsurance portion of that policy. *Id.* The Allstate policy limit was $100,000 per accident. *Id.* Allstate denied the claim upon grounds that its limit of $100,000 per accident was equal to the per accident limit of the tortfeasor's policy, and consequently, the tortfeasor's vehicle was not considered underinsured. *Id.* The trial court granted the motion and the Sanderses appealed. *Id.* They argued that because the

tortfeasor's policy contained a $50,000 per person limit, and their own Allstate policy contained a $100,000 per accident limit (the Allstate policy apparently contained no separate per person limit), the tortfeasor's vehicle was underinsured by $50,000. *Id.* We rejected that argument, concluding that the determinative comparison in that circumstance, *i.e.,* where more than one claimant sought recovery under a single policy, was the per accident limit of the insured's and the tortfeasor's policies. *Id.* at 886–87. Because those two amounts were the same in *Sanders,* this court concluded that the tortfeasor's vehicle was not underinsured. *Id.* at 887.

Six years following the *Sanders* decision, our supreme court issued its opinion in *Corr.* Although several parties were injured or killed, the policy at issue covered only one of the accident victims. *Corr,* 767 N.E.2d at 537. The parents of that victim, who was killed, received their portion of the proceeds from the tortfeasor's insurer, which paid the full limits of the tortfeasor's policy. *Id.* Those limits were divided among several victims, including the decedent's parents, and did not adequately compensate the decedent's parents. *Id.* Moreover, the amount paid to the parents was less than the per accident limit of their own separate underinsurance policies with American Family Insurance. *Id.* Therefore, each of them submitted a claim with American Family under their respective underinsured motorist policies. *Id.* American Family denied those claims on grounds that the tortfeasor's vehicle was not underinsured. *Id.* Our supreme court determined that the tortfeasor's vehicle was underinsured because the insureds' policies provided underinsured limits that exceeded the amount paid to the parents by the tortfeasor. *Id.* at 538. The amount received from the tortfeasor, though less than the per person limit, was the maximum amount available from the source

because the per-accident limit of the tortfeasor's policy had to be split among several claimants. *Id.*

Even though there were multiple victims in *Corr,* the legal question involved a policy covering only one of those victims. *Id.* Under those circumstances, the supreme court held that "if a limits-to-limits comparison is to be employed, where only one insured is injured in an accident, the appropriate limits to compare to determine if a vehicle is underinsured are the per person limit of the tortfeasor's liability policy and the per person limit of the insured's UIM coverage." *Id.*

Even though at first glance *Corr* appears to implicitly overrule *Sanders,* in *Graham* we determined otherwise. *See Graham,* 843 N.E.2d at 601. Specifically, the *Graham* court stated

[*Corr* ] did not overrule [*Sanders* ]. Indeed, the [s]upreme [c]ourt acknowledged as much in stating, "[i]n *Sanders* both injured parties were insured by the UIM policy. Under those circumstances the per accident limits may have been relevant." Reading *Corr* and [*Sanders* ] together, a guiding principle emerges, and that principle was succinctly stated in [*Sanders* ], viz., "the [uninsured/underinsured motorist coverage] statute's focus is on placing the insured in the position he would have occupied if the tortfeasor had liability coverage equal to [the insured's] underinsured motorist limits." Although the [s]upreme [c]ourt did not utilize the above language, its holding is consistent with this precept. Indeed, this comports with the statutory definition of "underinsured motor vehicle" which "includes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's

underinsured motorist coverage at the time of the accident[.]"

*Id.* (internal citations omitted). In other words, where multiple claimants seek recovery under a single policy, the *Sanders* analysis must be employed, *i.e.,* the determinative comparison is between the per accident limits of the insured's and the tortfeasor's policies. Applying this principle to the facts of *Graham,* we noted that several individual claimants sought to recover under a single underinsured motorist policy. *Id.* As such, we applied not only the person limitation with respect to each individual claimant, but also the per accident limit. *Id.*

The reasoning created in *Graham* as it distinguished the *Sanders* and *Corr* precedents was recently affirmed in *Auto–Owners Ins. Co. v. Eakle,* 869 N.E.2d 1244 (Ind.Ct.App.2007), *trans. denied.* In *Eakle,* three people (the Eakles) were seriously injured in an automobile accident. *Id.* at 1245. They filed a claim with the tortfeasor's insurance company, who paid out the tortfeasor's per accident policy limit of $500,000. *Id.* Subsequently, the Eakles filed a claim with Auto–Owners, their insurance company, for coverage payments under the UIM endorsement of the policy. *Id.* at 1247. This UIM endorsement had a $500,000 per person and $500,000 per accident liability limit. *Id.* at 1246. Auto–Owners denied the claim, contending that the tortfeasor's vehicle was not underinsured as the sum paid out by the tortfeasor was equivalent to the Eakles' policy per accident limit. *Id.* at 1247. The Eakles countered that because their individual per person payouts from the tortfeasor's insurance company were less than $500,000 each, they were eligible for additional UIM coverage up to the per accident policy limit. *Id.* Relying on *Sanders, Corr,* and *Graham,* we concluded that the *Eakle* situation was akin to "*Sanders* and *Gra-*

*ham* because it too involved multiple injured claimants seeking to recover under a single UIM policy." *Id.* Accordingly, the *Eakle* court employed a per accident limit per limit comparison. *Id.* As the amount paid by the tortfeasor's insurance company was not less than, but equivalent to the UIM limits available to the Eakles for a multiple person accident under their Auto–Owners policy, we concluded that the tortfeasor was not underinsured. *Id.*

■ Here, we are faced with multiple victims in the accident but only one of them—Hannah—is a claimant under the insurance policy at issue. As such, we find the *Corr* precedent to be applicable rather than *Sanders* or *Graham.* Therefore, because a single individual makes a claim for underinsured coverage under Grange Mutual's policy, we compare the per person liability limit of the tortfeasor's policy with the per person UIM coverage available to Hannah. *See Corr,* 767 N.E.2d at 538.

Grange Mutual, as did the trial court in its Order, asserts that the focus should be placed on the number of people injured in the accident and the number of *possible* UIM claims that can be made rather than on the actual claimants under the policy. As stated by the trial court,

> the [c]ourt notes that all [p]laintiffs except for one, [Hannah], were dismissed by motion of the [p]laintiffs during the course of the summary judgment proceedings. Based on [p]laintiffs brief, [p]laintiff attempts to use said dismissals and the fact that there is now only one plaintiff to draw a factual distinction from the aforementioned cases. The [c]ourt does not agree with [p]laintiff's position in that regard, *i.e.,* that [p]laintiff can voluntarily, with the cooperation of the other plaintiffs, place herself in that position[.]

(Appellant's App. p. 15). We disagree.

A careful reading of *Sanders, Corr,* and *Graham* indicates that the case law speaks in terms of claimants, not injured individuals who potentially might file a claim as a determinative element in the application of the UIM coverage limits. In particular, *Graham* explicitly stated that the pivotal question as to the applicable UIM limit turns on the number of claimants under a single policy. *See Graham,* 843 N.E.2d at 601.

Accordingly, comparing the per person liability limit of Isaacs' policy, *i.e.,* $25,000, with the per person UIM coverage available under the Grange Mutual policy, *i.e.,* $50,000, we must reach the conclusion that Isaacs was underinsured. Therefore, Hannah is entitled to UIM coverage under Anitra's policy.

### III. *Amount Available Under The Policy*

Hannah next asserts that as a result of the accident, she recovered $5,100 from Isaacs' liability policy, which is less than the minimum limits of liability for underinsured coverage in Indiana. Maintaining that I.C. § 27–7–5–2(a) mandates UIM coverage limit of $50,000 per person, Hannah requests this court to award her $44,900 of coverage under Anitra's policy with Grange Mutual.

In response, Grange Mutual refers to *Progressive Halcyon Ins. Co. v. Petty,* 883 N.E.2d 854 (Ind.Ct.App.2008), *trans. denied.* In *Petty,* another panel of this court concluded that the $50,000 threshold mentioned in Indiana Code section 27–7–5–2(a) refers only to the $50,000 per accident limit with the minimum per person UIM coverage set at $25,000. The *Petty* court's reasoning was three-fold: (1) to conclude otherwise would render I.C. § 27–7–5–2(a) internally inconsistent and render meaningless its incorporation by reference of the "limits set forth in I.C. § 9–25–4–5;" (2) to prevent the potential for collusion

between insureds; and (3) even though I.C. § 27–7–5–2 is a full recovery statute, this does not necessarily assure full indemnification for all potential damage to all potential insureds. *See id.* at 864–65.

■ However, we respectfully note that *Petty* is not binding on this court. Indiana does not recognize horizontal *stare decisis* and therefore, each panel of this court has coequal authority on an issue and considers any previous decision by other panels but ultimately is not *bound* by those decisions. *In re C.F.,* 911 N.E.2d 657, 658 (Ind.Ct.App.2009).

■ Although *Petty* relied on three considerations in concluding that the per person UIM coverage under the statute is a mandatory limit of $25,000, conspicuously absent from its analysis is a reference to the statute's legislative history. A fundamental rule of statutory construction is that an amendment changing a prior statute indicates a legislative intention that the meaning of the statute has changed. *De-Prizio,* 705 N.E.2d at 460. Such an amendment raises the presumption that the Legislature intended to change the law unless it clearly appears that the amendment was passed in order to express the original intent more clearly. *Id.*

As originally enacted,[2] Indiana's uninsured motorist statute mandated that insurance carriers offer uninsured motorist coverage in an amount equal to Indiana's minimum financial responsibility requirements.[3] In 1982, the Legislature replaced the statute with I.C. § 27–7–5–2 requiring

that insurers not merely *offer* but *provide* uninsured motorist coverage in an amount equal to the minimum financial responsibility requirements (but not exceeding the bodily injury and property damage limits) of the insured's policy.[4] In 1987, the Legislature broadened the scope of the statute by requiring insurers to provide underinsured motorist coverage in addition to uninsured motorist coverage.[5] This amendment also mandated that insurers provide coverage in limits equal to the limits of liability specified in the bodily injury and property damage provisions of an insured's policy. Insureds were also allowed to purchase coverage in excess of those limits, thereby transforming the act into a "full recovery" statute. *DePrizio,* 705 N.E.2d at 461. This development is critical: no longer did the statute limit recovery to the bodily injury and property damage limits of the insured's policy as had been the case when we construed the statute's meaning previously. *Id.*

Accordingly, because of this amendment enacted in 1987, as of January 1, 1988, the minimum liability limits mandated by the statute for uninsured and underinsured motorist coverage was $25,000 per person and $50,000 per accident. The Legislature's purpose in amending the statute was to mandate that "an insured either be protected against loss caused by uninsured/underinsured drivers to the same extent as that insured has seen fit to indemnify others for his own potential liability[.]" *Meridian Mut. Ins. Co. v. Richie,* 540 N.E.2d 27, 30–31 (Ind.1989), *overruled*

---

2. Ind.Code § 27–7–5–1 (originally enacted as Acts 1965, c. 138, s. 1).

3. Indiana's Financial Responsibility Act compels motorists to make provisions for the protection of other drivers on the road in order that persons who suffer loss due to the tragedy of auto accidents shall have a source and means of recovery. *DePrizio,* 705 N.E.2d at 460 n. 8. As part of the Act, Indiana Code

§ 9–25–4–5 outlines the minimum amounts of financial responsibility required for persons who register or operate motor vehicles on Indiana roads, streets, or highways.

4. Acts 1982, P.L. 166, Sec. 1.

5. P.L. 391–1987, Sec. 1, eff. Jan. 1, 1988.

*on other grounds,* 544 N.E.2d 488 (Ind. 1989).

On January 1, 1995, another amendment to the statute became effective.[6] This amendment inserted the fifth and sixth sentences into the statute as it is currently enforced and provides:

> However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000).

\* \* \*

> Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000).

■ After I.C. § 27–7–5–2(a) was amended in 1987, two important appellate decisions were issued which signaled the need for the 1994 amendment—effective on January 1, 1995. In *Meridian Mut. Ins. Co., v. Richie,* 540 N.E.2d 27, 30–31 (Ind.1989), *overruled,* 544 N.E.2d 488 (Ind. 1989) and *Landis v. American Interinsurance Exchange,* 542 N.E.2d 1351 (Ind.Ct. App.1989), both the supreme court and this court criticized the underinsured coverage as illusory. *See Landis,* 542 N.E.2d at 1354. Between 1988 and 1994, the tortfeasor responsible for bodily injury claims involving a motor vehicle would be insured for the minimum statutory amount pursuant to I.C. § 9–25–4–5 or be uninsured and a recovery would then be made through the uninsured endorsement subject to the minimum amounts mandated by I.C. § 27–7–5–2(a). Under either scenario—I.C. § 9–25–4–5 or I.C. § 27–7–5–2(a)—claimants could not recover under the underinsured provision because either the liability coverage or the uninsured coverage would be available in the same amount. As a result, between 1988 and 1994, underin-

sured coverage in the minimum limits would never be payable when a recovery was sought from another Indiana motorist. It is generally known that an illusory coverage violates Indiana's public policy interest. *See Richie,* 540 N.E.2d at 31. Heeding the appellate opinions, the 1994 amendment then required that "underinsured motorist coverage must be made available in *limits* of not less than fifty thousand dollars ($50,000)."[7] *See* I.C. § 27–7–5–2(a) (emphasis added).

■ We are mindful that courts may assume that an enactment of the Legislature changing a statute was a response to an interpretation placed upon that statute by the courts. *Huff v. Biomet, Inc.,* 654 N.E.2d 830, 834 (Ind.Ct.App.1995). In that regard, when the Legislature replaces the provision of an act which has been construed by the courts, it is presumed that it is responding to those appellate decisions which construed the legislation. *Egan v. Bass,* 644 N.E.2d 1272, 1274 (Ind. Ct.App.1994).

It is evident that in the years since its inception, Indiana's uninsured/underinsured motorist statute has undergone significant modification, culminating into an expansion of the underinsured liability coverage. *See DePrizio,* 705 N.E.2d at 461. We find that this history of expanding the availability of uninsured and underinsured motorist coverage manifests an intent by our Legislature to give insureds the opportunity for full compensation for injuries inflicted by financially irresponsible motorists. Thus, for the 1994 amendment to have any purpose, both the per person limit and per accident limit for underinsured coverage must be read as being $50,000 per person; reading the provision

---

6. P.L. 130–1994, Sec. 41 & P.L. 116–1994, Sec. 56.

7. It should be noted that the 1994 amendment to I.C. § 27–7–5–2(a) refers to "limits" as opposed to "limit."

otherwise would make the coverage illusory as discussed in *Richie.* *See Richie,* 540 N.E.2d at 30–31. Accordingly, today, we expressly disagree with *Petty,* which lowered the UIM coverage to $25,000 per person and placed claimants back in the position they held between 1988 and 1994 when claimants paid a premium for mandatory UIM coverage that was illusory and allowed insurance companies to receive a windfall by collecting premiums without carrying the corresponding risk of loss. Because we now hold that the mandatory per person limit for underinsured coverage pursuant to I.C. § 27–7–5–2 is $50,000, we conclude that Hannah's available UIM coverage under Grange Mutual's coverage is $44,900.

## CONCLUSION

Based on the foregoing, we conclude that Hannah is entitled to underinsured motorist coverage under Grange Mutual's policy for an available per person limit of $44,900.

Reversed.

ROBB, C.J., and BROWN, J., concur.