FILED

Mar 26 2020, 9:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Robert J. Palmer
Jon R. Rogers
Georgianne M. Walker
May Oberfell Lorber
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Crystal Gates Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

Casey R. Stafford
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christine Catanzarite,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Safeco Insurance Company of<br>Indiana,<br>*Appellee-Defendant.* | March 26, 2020<br><br>Court of Appeals Case No.<br>19A-CT-2338<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable David C.<br>Chapleau, Judge<br><br>Trial Court Cause No.<br>71D06-1809-CT-451 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, Christine Catanzarite (Catanzarite), appeals the trial court's summary judgment concluding that there was no genuine issue of material fact precluding judgment in favor of the Appellee-Defendant, Safeco Insurance Company of Indiana (Safeco).

We affirm.

# ISSUE

Catanzarite presents one issue on appeal, which we restate as: Whether the trial court erred by granting summary judgment in favor of Safeco.

# FACTS AND PROCEDURAL HISTORY

On February 1, 2018, Catanzarite was driving eastbound on Sample Street, South Bend, Indiana. At around the same time, Timothy Smith (Smith) was driving westbound on Sample Street, and as he was turning south onto Edison Street, an intersection on Sample Street, he struck Catanzarite's vehicle. The accident was caused by Smith's negligence. As a result of the collision, Catanzarite suffered broken legs and was hospitalized at Memorial Hospital for approximately three weeks, during which time reasonable and necessary medical expenses in the amount of $269,841.32 were incurred by Catanzarite. On April 13, 2018, Memorial Hospital timely filed with the St. Joseph County

Recorder's Office its hospital lien for the recovery of the costs of the health care services rendered to Catanzarite.[1]

[5] At the time of the collision, Smith was insured by Hanover Insurance (Hanover), and he had tortfeasor's liability insurance coverage with a policy limit of $100,000 per person. Catanzarite had underinsured motorist (UIM) coverage with Safeco which had a policy limit of $100,000 per person.

[6] On March 25, 2018, Hanover sent a letter to Catanzarite, stating that upon a signed release, it would pay Catanzarite $100,000, the maximum payable under Smith's bodily injury liability coverage. With preliminary medical expenses amounting to $269,841.32, through her lawyer, Catanzarite wrote to Safeco and claimed that her total damages were in excess of Smith's bodily injury liability coverage, and she asserted a claim under the Underinsured Motorist (UIM) provision of her own policy. Safeco denied this claim, claiming that Smith's $100,000 bodily injury liability limits were equal to Catanzarite's $100,000 UIM coverage limits, thus Catanzarite was precluded from further payment.

[7] On September 26, 2018, Catanzarite filed a Complaint for Declaratory Judgment, seeking a declaration as to whether she was entitled to her UIM coverage from Safeco. On December 5, 2018, Safeco filed its response.

---

[1] At the summary judgment hearing, Catanzarite claimed that Memorial Hospital had reduced her medical expenses to $25,000. Safeco did not challenge the reduced medical lien and the record is devoid of any evidence that Memorial Hospital perfected another lien with respect to the adjusted amount. Thus, we rely on the testimony offered at the summary judgment hearing.

[8]     On May 10, 2019, Catanzarite filed a motion for summary judgment against Safeco arguing that there was no genuine issue of material fact and was entitled to judgment as a matter of law. In her memorandum in support, Catanzarite argued that once her hospital lien is deducted from the $100,000 settlement she and was receiving from Hanover, the balance of any payment available to her under Smith's bodily injury liability policy would be less than the limits under her UIM policy at the time of the accident. Based on her computation, Catanzarite asserted that Smith was underinsured at the time of the accident, and that she was entitled to her own UIM coverage benefits from Safeco. Safeco filed a response on June 17, 2019, opposing Catanzarite's summary judgment motion. Safeco did not factor in the hospital lien reducing the available payments under Smith's policy and it ultimately argued that Smith was not operating an underinsured motor vehicle at the time of the accident, therefore, no UIM coverage benefits were available to Catanzarite. On September 13, 2019, the trial court conducted a hearing on the parties' motions, and it granted summary judgment in favor of Safeco stating, in pertinent part that

> After review of the submissions for summary judgment and oral argument, [the trial court] finds that there is no genuine issue of material fact and denies [Catanzarite's] [m]otion for [s]ummary [j]udgment and grants summary judgment in favor of Safeco as a matter of law. Specifically, the [c]ourt finds that payment of a hospital lien by a tortfeasor's liability insurer does not reduce the limit of liability coverage under the tortfeasor's insurance policy for purposes of determining whether the tortfeasor is underinsured. As such, the [c]ourt declares that in relation to the

> February 1, 2018 automobile accident between [Catanzarite] and
> [] Smith, there are no [UIM] coverage benefits available to
> [Catanzarite] under the automobile insurance policy issued to
> [Catanzariet] by Safeco under Policy No. K2487269.
>
> The [c]ourt finds that no just cause for delay exists and expressly
> directs entry of final judgment on Safeco's behalf.

(Appellant's App. Vol. II, p. 8)

[9] Catanzarite now appeals. Additional information will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[10] Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . ., or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

[11] In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we

must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. "Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party." *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). The party that lost in the trial court bears the burden of persuading us that the trial court erred. *Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1089 (Ind. Ct. App. 2018), *trans. denied*.

[12]     In Indiana, the interpretation of an insurance policy is a matter of law. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1273-74 (Ind. Ct. App. 2004). Insurance contract provisions are subject to the same rules of construction as other contracts. *Id*. Thus, courts must construe insurance policies as a whole, rather than considering individual words, phrases, or paragraphs. *Id*. If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning. *Newnam Mfg., Inc. v. Transcon. Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007). Additionally, "[i]nsurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law." *Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 423 (Ind. Ct. App. 2006). Thus, "[a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability." *Klepper v. ACE Am. Ins. Co.*, 999 N.E.2d 86, 90 (Ind. Ct. App. 2013). "Where an ambiguity exists, that is, where reasonably intelligent people may

interpret the policy's language differently, Indiana courts construe the insurance policies strictly against the insurer." *Auto-Owners Inc. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012). However, "an ambiguity is not affirmatively established simply because controversy exists, and one party asserts an interpretation contrary to that asserted by the opposing party." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002) (citations omitted).

## II. *Applicable Statutes and Policy Provisions*

[13] At the summary judgment hearing, Catanzarite stated that Memorial Hospital had reduced her medical expense from $269,841.32 to $25,000. While acknowledging that Hanover had agreed to pay her $100,000, the maximum payable under Smith's bodily injury liability coverage, Catanzarite argued that her net recovery (the actual available amount) payable to her under Smith's bodily injury liability policy would be $75,000, an amount less than her $100,000 UIM policy limits by Safeco. Thus, Catanzarite argued that the medical lien would reduce the recovery amount accessible for payment under the terms set out in Indiana Code section 27-7-5-4(b), that Smith was operating an underinsured motor vehicle at the time of the accident to the extent of the medical lien, and she was entitled to her UIM coverage benefits from Safeco.

[14] Indiana's UIM statute allows insurers and their insured to set their own UIM liability limits, but it prescribes the comparative mechanism for determining whether an insured is eligible to collect under a policy's UIM provision. *See Corr v. Am. Family Ins.*, 767 N.E.2d 535, 540-41 (Ind. 2002). Indiana Code section 27-7-5-4(b) defines an underinsured motor vehicle as follows:

For the purpose of this chapter, the term underinsured motor vehicle, subject to the terms and conditions of such coverage, includes an insured motor vehicle where the *limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident*, but does not include an uninsured motor vehicle as defined in subsection (a).

(emphasis added).  The aim of UIM coverage is "to give the insured the recovery he or she would have received if the underinsured motorist [the tortfeasor] had maintained an adequate policy of liability insurance."  *Corr*, 767 N.E.2d at 540.  UIM coverage is "designed to provide individuals with indemnification in the event that negligent motorists are inadequately insured." *Id*.  Given the remedial nature of UIM coverage, "underinsured motorist legislation is to be liberally construed" and "read in a light most favorable to the insured."  *Masten v. AMCO Ins. Co.*, 953 N.E.2d 566, 570 (Ind. 2011).

[15]  Catanzarite's UIM coverage contained the following pertinent language:

> **INSURING AGREEMENT**
> A.  We will pay damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
>
> 1.  Sustained by that insured; and
> 2.  Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.  We will pay damages under this coverage caused

by an accident with an underinsured motor vehicle only if [C] 1. or 2. below applies:

\* \* \* \*

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is either:

1. Less than the limit of liability for this coverage; or

2. Reduced by payments to persons, other than insureds, injured in the accident to less than the limit of liability for this coverage.

\* \* \* \*

(Appellant's App. Vol. II, pp. 53-54).

[16] Also, to determine whether a tortfeasor's available coverage may be reduced by the payment of a hospital lien, we must consider the fundamental nature of the hospital lien itself. Indiana Code section 32-33-4-3 governs hospital liens and provides:

(a) A person, a firm, a partnership, an association, a limited liability company, or a corporation maintaining a hospital in Indiana or a hospital owned, maintained, or operated by the state or a political subdivision has a lien for all reasonable and necessary charges for hospital care, treatment, and maintenance of a patient (including emergency ambulance services provided by the hospital) upon any cause of action, suit, or claim accruing

to the patient, or in the case of the patient's death, the patient's legal representative, because of the illness or injuries that:

> (1) gave rise to the cause of action, suit, or claim; and

> (2) necessitated the hospital care, treatment, and maintenance.

(b) The lien provided for in subsection (a):

> (1) except as provided in subsection (c), applies to any amount obtained or recovered by the patient by settlement or compromise rendered or entered into by the patient or by the patient's legal representative;

> (2) is subject and subordinate to any attorney's lien upon the claim or cause of action;

* * * *

(4) is not assignable; and

(5) must

> (A) first be reduced by the amount of any benefits to which the patient is entitled under the terms of any contract, health plan, or medical insurance; and

> (B) reflect credits for all payments, contractual adjustments, write- offs, and any other benefit in favor of the patient;

after the hospital has made all reasonable efforts to pursue the insurance claims in cooperation with the patient.

(c) If a settlement or compromise that is subject to subsection (b)(1) is for an amount that would permit the patient to receive less than twenty percent (20%) of the full amount of the settlement or compromise if all the liens created under this chapter were paid in full, the liens must be reduced on a pro rata basis to the extent that will permit the patient to receive twenty percent (20%) of the full amount.

[17] By this statute, our legislature gives the hospital a specific interest in property otherwise accruing to the patient for the amount of the health care, treatment, and maintenance rendered by the hospital to its patient when the hospital has properly perfected its lien. *National Ins. Ass'n v. Parkview Mem'l Hosp.*, 590 N.E.2d 1141, 1144 (Ind. Ct. App. 1992). With a properly perfected lien for the amount of services provided to the hospital's patient, the hospital has a direct right to the insurance proceeds and other settlement funds which are paid to the patient by the person claimed to be liable for the patient's injuries or that person's agent. *Id.*

## III. *Analysis*

[18] The undisputed facts disclose that Hanover offered to settle with Cantanzarite, and pay her $100,000, the maximum amount under Smith's liability policy. At the summary judgment hearing, Catanzarite claimed that her unpaid medical lien was roughly $25,000 and that the amount would be settled from her settlement proceeds from Hanover. Catanzarite's argument on appeal is that she should be entitled to collect an additional $25,000, the difference between

her UIM policy limit and the funds she will receive from Hanover after her medical expenses are paid off.

[19] Safeco maintains that Catanzarite's unpaid medical expenses continue to be her responsibility, and her medical expenses should not seek to reduce Smith's bodily injury coverage or concomitantly increase her UIM coverage. Safeco continues by arguing that there are several underlying factors that foreclose Catanzarite's claim on appeal: (1) Catanzarite's UIM policy had an applicable limit of $100,000, and the maximum payable limit under Smith's bodily injury coverage was equal to Catanzarite's UIM policy; and (2) the medical lien does not serve to reduce Smith's liability coverage limit for purposes of determining whether Catanzarite is eligible to collect under her UIM policy. Therefore, Safeco maintains that Catanzarite's arguments are contrary to the provisions of Indiana Code section 27-7-5-4(b).

[20] Turning to Safeco's first claim that we should compare Catanzarite's UIM policy limits to Smith's liability insurance policy limits for the purposes of determining whether Smith was underinsured at the time of the accident, we find our supreme court holding in *Corr* insightful. In *Corr*, our supreme court held that the tortfeasor's liability limit was not the appropriate amount to compare with the insured's UIM policy limit for purposes of determining whether the tortfeasor's vehicle was underinsured. *Corr*, 767 N.E.2d at 540. The plaintiffs in that case were in a group of multiple claimants and received payment in an amount less than the liability limit on their UIM policy. *Id.* at 538. However, the tortfeasor's liability limits were not less than the limits on

the UIM policy. *Id.* As a result, the tortfeasor's vehicle would only be underinsured under Indiana law if the court compared the UIM limits with the amount of the payment that the plaintiffs received, and the dispositive issue was whether the court should compare the UIM policy limits to the tortfeasor's policy limits or to the amount that the plaintiffs recovered. *Id.*

[21] The *Corr* court determined that Indiana Code section 27-7-5-4(b) qualifies the tortfeasor's "limits of coverage" with the phrase "available for payment to the insured" rather than directing courts to compare the tortfeasor's limits with the insured's UIM limits. *Id.* at 539. The *Corr* court concluded that the statute's use of the phrase "available for payment," indicates that it "does not express [a] clear preference for limits-to-limits comparison." *Id.* Instead, the statute's determination of whether a tortfeasor's vehicle is underinsured turns on the meaning of what amounts qualify as being "available for payment." *Id.* The *Corr* court then examined the meaning of "available for payment," and concluded that this phrase means "money present or ready for immediate use by the insured, not amounts potentially accessible." *Id.* at 540. It went on to conclude that the tortfeasor's liability limit was not an amount that was "available for payment" under the statute because that amount was "theoretically available"; instead, the appropriate amount for comparison was the payment that the insured had received. *Id.*

[22] In *Lakes v. Grange Mut. Cas. Co.,* 964 N.E.2d 796, 805 (Ind. 2012), our supreme court further clarified that a limits-to-limits comparison is not the proper approach to determine whether a vehicle is underinsured under Indiana law.

The *Lakes* court discussed the statutory definition of an underinsured motor vehicle at length and ultimately held that "whether a vehicle is underinsured depends, in all cases, on whether the amount received from the tortfeasor's policy is less than the per-person limits on UIM coverage." *Id.*

[23] In the present case, Hanover agreed to pay Catanzarite $100,000, the maximum payable under Smith's bodily injury liability coverage, and pursuant to *Corr* but contrary to Safeco's argument on appeal, we are not permitted to compare Catanzarite's $100,000 UIM policy limit to Smith's $100,000 bodily injury liability coverage to determine if Smith was underinsured at the time of the accident; rather, the proper assessment should be to determine the actual amount that Catanzarite would ultimately receive from the settlement that Hanover was offering. With that said, it brings us to our next discussion, *i.e.*, whether a medical lien reduces the amount payable under Smith's bodily injury liability coverage for the purposes of triggering Catanzarite's UIM benefits under her policy.

[24] Our reading of the UIM and Hospital Lien statutes leads us to conclude that Catanzarite's entire argument on appeal misinterprets the purpose of the UIM statute as well as the underlying purpose of the Hospital Lien statute. The Hospital Lien statute provides that a lien applies to any amount obtained or recovered by the patient through settlement. *See* I.C. § 32-33-4-3. The $100,000 that Hanover was offering, which is a settlement, is subject to any lien that Memorial Hospital has against Catanzarite. *See Gheae*, 854 N.E.2d at 423 (holding that "[i]nsurance companies are free to limit their liability, so long as

they do so in a manner consistent with public policy as reflected by case or statutory law."). Further, as the *Corr* court held, the "available for payment to the insured" language has been construed by Indiana courts as follows:

> 'Available' ordinarily means 'present or ready for immediate use.' Thus, 'available for payment to the insured,' when describing coverage limits, is money present or ready for immediate use by the insured, not amounts potentially accessible.

*Corr*, 767 N.E.2d at 539-40 (citation omitted). Catanzarite does not claim that the hospital bill is not her responsibility, and we find that when a tortfeasor's liability carrier pays a hospital lien to a hospital pursuant to the Hospital Lien statute, it does so for the obvious benefit of the insured, and the insured receives protection for her actual loss, within the limits of the policy of which she is a beneficiary. While it is true that any payment of the lien directly to Memorial Hospital does diminish the amount of funds actually passing through Catanzarite's hands, it does not diminish the $100,000 settlement proceeds she is receiving from Hanover, to which Catanzarite is entitled under the operative insurance policy, *i.e.,* Smith's bodily injury liability policy. Stated differently, Smith's entire $100,000 is available for Catanzarite for her immediate use and benefit. If Catanzarite is permitted to collect an additional $25,000 from Safeco under her UIM policy, such payment would create a windfall, and it could ultimately increase her UIM coverage and permit an additional recovery which would disregard the stated purpose behind Indiana's UIM statutory coverage scheme. *See Corr*, 767 N.E.2d at 540 (holding that the purpose of UIM coverage under Indiana law is "to give the insured the recovery he or she would have

received if the underinsured motorist [the tortfeasor] had maintained an adequate policy of liability insurance."). As the $100,000 under Smith's liability policy is adequate and readily accessible for Catanzarite's immediate use and benefit, any payment of Catanzarite's medical bills can be off set from the settlement proceeds she receives from Hanover, and payment of her lien does not reduce the actual amount she receives from Hanover. Accordingly, we hold that Smith had an adequate bodily injury liability policy at the time of the accident and was therefore not an underinsured motorist and that Catanzarite was not entitled to a claim her UIM coverage benefits from Safeco. Thus, we affirm the trial court's summary judgment in favor of Safeco.

# CONCLUSION

For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of Safeco.

Affirmed.

Baker, J. and Brown, J. concur